STATE of Wisconsin, Plaintiff-Respondent,

v.

Christian R. BANGERT, Defendant-Appellant.

Supreme Court

*No. 85–1179–CR. Argued April 30, 1986.—Decided June 24, 1986.*

(Also reported in 389 N.W.2d 12.)

For the defendant-appellant there were briefs and oral argument by *John E. Tradewell,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

LOUIS J. CECI, J. This is a review of an order of the circuit court for Eau Claire county, issued by Arthur A. Cirilli, presiding circuit judge, dated May 28, 1985, which denied the defendant's postconviction mo-

tion to withdraw the defendant's plea of no contest to second-degree murder. We granted the state's petition to bypass the court of appeals, pursuant to sec. 808.05(1), Stats. Because we find no error in the order denying the motion to withdraw, we affirm the decision of the circuit court.

Robert Bolton was a City of Eau Claire police officer. During the early morning hours of October 6, 1982, Officer Bolton was murdered. The defendant, Christian R. Bangert, was charged with one count of first-degree murder, contrary to sec. 940.01, Stats., in the shooting death of Officer Bolton. He was later charged with an additional count of endangering safety by conduct regardless of life, contrary to sec. 941.30.

The defendant raises several issues on review, foremost of which is whether he should be allowed as a matter of right to withdraw his no contest plea because the plea hearing record is insufficient to show that he understood the nature of the charge and because the plea colloquy itself was facially insufficient. He also claims that he should be entitled to withdraw his plea because of the state's alleged breaches of the plea bargain agreement. Lastly, he alleges that the circuit court erred by ordering a second change of place of trial, in apparent violation of sec. 971.22(3), Stats., which generally prohibits a second change of place for a trial and limits the right to move for a change of venue to the defendant.

We hold that although the no contest plea colloquy was insufficient to ascertain the defendant's understanding of the nature of the charges against him, the totality of the circumstances, including the record made at the postconviction hearing on the motion to withdraw, establishes that Bangert's plea of no contest

251

was knowingly, voluntarily, and intelligently entered. Because we adopt a new remedy for *prima facie* violations of statutorily and judicially mandated plea hearing procedures, we overrule that part of our decision in *State v. Cecchini,* 124 Wis. 2d 200, 211, 368 N.W.2d 830 (1985), which restricted a trial court's review of a defendant's understanding of the nature of a charge to the plea hearing transcript. We also hold that any breaches of the plea bargain agreement by the state were neither material nor significant; the defendant, therefore, is not entitled to withdraw his plea on those grounds. Finally, we hold that the defendant waived any defect in the venue proceedings by virtue of his no contest plea. Even without the effect of the waiver rule, the circuit court committed no error.

On December 8, 1982, after he was charged with first-degree murder and endangering safety, Banger moved the circuit court pursuant to sec. 971.22, Stats., to change the venue of his trial. The circuit court granted the motion and ordered the trial moved from Eau Claire county to Douglas county. On April 21, 1983, the state moved the circuit court for an order to return the trial to Eau Claire county, based in part on the manpower shortage which the trial would create within the Eau Claire Police Department if the trial were conducted in Douglas county. The defendant opposed the motion. Nevertheless, the circuit court ordered that the trial be returned to Eau Claire county. It contemporaneously ordered, pursuant to sec. 971.225, that a jury be selected in Douglas county and sequestered for the duration of defendant's trial in Eau Claire.

The charges were never tried to a jury. Bangert pleaded no contest to the reduced charge of second-

degree murder on May 25, 1983; the endangering safety charge was dismissed in consideration of his plea.

Bangert's no contest plea arose out of an agreement between the state and Bangert. The agreement was expressed in a letter from Bangert's defense counsel to then Eau Claire County District Attorney Rodney Zemke. The agreement included a provision whereby "you would not directly or indirectly mention the word maximum" in connection with the sentencing recommendation for Bangert. The letter also included the following provision: "[Y]ou are agreeing as to the future not to oppose any parole requests from Mr. Bangert."

Bangert's counsel and Zemke informed Judge Cirilli at the plea hearing that Bangert's plea was pursuant to the plea agreement. Immediately after counsel explained the general provisions of the plea agreement, Judge Cirilli undertook a perfunctory colloquy with the defendant in order to ascertain that the defendant understood that he was pleading no contest to a charge of second-degree murder and that the defendant was so pleading without any threats or promises. After Bangert's counsel affirmed that he had advised Bangert of the constitutional rights which Bangert was waiving, Judge Cirilli accepted Bangert's plea. On July 13, 1983, the circuit court sentenced Bangert to a maximum term of twenty years in prison. The record does not disclose that the trial court ever discussed the nature of the charge with the defendant.

On April 9, 1984, Bangert filed a postconviction motion to withdraw his no contest plea, pursuant to

secs. 974.02 and 809.30, Stats.[1] The circuit court denied the motion without a hearing. The court of appeals reversed and ordered the circuit court to hold an evidentiary hearing on the motion to withdraw.

An evidentiary hearing was held on February 12, 1985. The circuit court thereafter made findings of fact and conclusions of law. Among the conclusions were that the state did not materially breach the provisions of the plea agreement to the detriment of the defendant and that the defendant knowingly, voluntarily, and intelligently entered his no contest plea at the time of the plea hearing. The court concluded that the entire record demonstrated that the defendant was aware of his constitutional rights at the time the plea was entered, and, therefore, he knowingly and voluntarily waived them. On May 28, 1985, the circuit court denied the defendant's motion to withdraw his no contest plea.

---

[1] Section 974.02, Stats., provides in relevant part:

"**974.02 Appeals and postconviction relief in criminal cases.** (1) A motion for postconviction relief other than under s. 974.06 by the defendant in a criminal case shall be made in the time and manner provided in ss. 809.30 and 809.40. An appeal by the defendant in a criminal case from a judgment of conviction or from an order denying a postconviction motion or from both shall be taken in the time and manner provided in ss. 808.04(3), 809.30 and 809.40. . . ."

Section (Rule) 809.30, Stats., provides in relevant part:

"**809.30 Rule (Appeals in felony cases).** (1) APPEAL OR POSTCONVICTION MOTION BY DEFENDANT. (a) An appeal or motion for postconviction relief by a defendant in a felony case must be taken in accordance with this subsection."

## I.

Bangert does not expressly assert that his no contest plea was unknowingly, involuntarily, or unintelligently made or that he did not understand the nature of the charge at the time he entered his no contest plea. Rather, he argues that the colloquy conducted by the trial court at the plea hearing was constitutionally insufficient to ascertain his understanding of the nature of the charge and his knowledge of which constitutional rights he was waiving. He also submits that, pursuant to *State v. Cecchini,* 124 Wis. 2d 200, 368 N.W.2d 830 (1985), and *McAllister v. State,* 54 Wis. 2d 224, 194 N.W.2d 639 (1972), the circuit court in considering a motion to withdraw a plea is limited to reviewing the plea hearing record in ascertaining the voluntariness of a defendant's plea. The circuit court erred, he concludes, when it reviewed the totality of the record to determine the voluntariness of Bangert's plea.

The state responds that the Federal Constitution does not mandate any particular procedures on state courts to ensure that a plea is made voluntarily, with understanding of the nature of the charge. Rather, the procedures that a state court should follow in accepting a guilty or no contest plea are governed by sec. 971.08, Stats., or by rules enunciated by this court pursuant to this court's supervisory powers over lower state courts. The state asks us to reformulate the foundation of the law of this jurisdiction with respect to the taking of guilty or no contest pleas, dating from *Ernst v. State,* 43 Wis. 2d 661, 170 N.W.2d 713 (1969), through *State v. Minniecheske,* 127 Wis. 2d 234, 378 N.W.2d 283 (1985). Specifically, the state urges us to modify the holding of *Cecchini* which states that a trial court vio-

lates a defendant's right to due process when it fails to ascertain the defendant's understanding of the nature of the charge on the record at the plea hearing. *Cecchini,* 124 Wis. 2d at 201.

A. *Constitutional Standard and Statutory Procedure*

We begin our analysis by noting that the law concerning the acceptance of guilty or no contest pleas relates to two different points in the plea-taking process: the initial plea hearing and, when applicable, the postconviction motion to withdraw. The law relating to such matters may be discussed in terms of what the Constitution requires, what relevant statutes require, and what additional rules may be necessary to ensure that a plea is voluntarily and intelligently made.

In *Cecchini,* that defendant brought a sec. 974.06 motion to withdraw his no contest plea on the claim that he did not understand the elements of the crime at the time the plea was accepted. We reiterated at that time that " 'the plea proceedings themselves must be constitutionally acceptable or the plea may be withdrawn as a matter of right.' " *Cecchini,* 124 Wis. 2d at 206 (quoting *State v. Bartelt,* 112 Wis. 2d 467, 480, 334 N.W.2d 91 (1983)). Implicit in that statement is the conclusion that the procedures used to accept a guilty or no contest plea are themselves constitutionally mandated. *E.g., Bartelt,* 112 Wis. 2d at 480 ("[T]he plea proceedings themselves must be constitutionally acceptable or the plea may be withdrawn as a matter of right."). After a thorough review of the relevant federal and state cases, we hold that that conclusion is erroneous; we withdraw any language from our prior deci-

256

sions which indicates that plea hearing procedures, beyond the general standard discussed in *Boykin v. Alabama,* 395 U.S. 238 (1969), are mandated by the Federal Constitution.

The view that the Constitution imposed certain procedural requirements upon states in accepting guilty or no contest pleas had its origin in this jurisdiction in *Ernst v. State,* 43 Wis. 2d 661. *Ernst,* in turn, relied on *Boykin v. Alabama,* 395 U.S. 238. We do not interpret *Boykin* as addressing the procedures which states must follow to achieve conformance with the constitutional standard.

In *Boykin,* the state court judge did not question the defendant concerning the entry of his guilty plea, and the defendant did not address the court. *Id.* at 239. The Supreme Court held that it was error "plain on the face of the record" for the trial judge to accept the guilty plea "without an affirmative showing that [the plea] was intelligent and voluntary." *Id.* at 242. Similar to a confession, the constitutional validity of a plea must be measured in terms of whether it was entered knowingly, voluntarily, and intelligently. Thus, *Boykin* merely sets forth the constitutional standard that there must be an affirmative showing "or there must be an allegation and evidence which show[s]" that the plea was knowingly, voluntarily, and intelligently made. *Id.* This includes a showing or an allegation and evidence which shows that the effective waiver of federal constitutional rights was knowing and intelligent. *Id.* at 243. A plea will not be voluntary unless the defendant has a full understanding of the charges against him. *Brady v. United States,* 397 U.S. 742, 748, n. 6 (1970).

Other federal case law assists in delineating the *Boykin* constitutional standard. The Supreme Court has stated that a guilty plea cannot be considered voluntary unless the accused has " 'real notice of the true nature of the charge against him. . . .' " *Marshall v. Lonberger,* 459 U.S. 422, 436 (1983) (emphasis added) (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)). The high court has also intimated that the voluntariness of a plea should not be tested by determining whether a litany of the formal legal elements was read to the defendant. *Henderson v. Morgan,* 426 U.S. 637, 644 (1976). Instead, a court may consider the totality of the circumstances to make such a determination. *Id. See also, Brady,* 397 U.S. at 749 (voluntariness of defendant's plea can be determined only by considering all of the relevant circumstances surrounding it).

In *Ernst,* this court construed *Boykin* as requiring that the procedures of Fed. R. Crim. Proc. 11 "are required in state courts as a matter of federal constitutional law." *Ernst,* 43 Wis. 2d at 673. As interpreted in *McCarthy v. United States,* 394 U.S. 459 (1969), Rule 11 required that the federal district judge must directly inquire whether the defendant understands the nature of the charge against him and whether he is aware of the consequences of his plea. *McCarthy,* 394 U.S. at 465. However, the *McCarthy* Court expressly stated that its decision was based solely on Rule 11, not on any constitutional grounds. *Id.* at 464. *McCarthy* also set forth that a plea of guilty or no contest cannot be voluntary unless the defendant possesses an understanding of the law in relation to the facts. *Id.* at 466.

The upshot of *McCarthy* was that a federal district judge could no longer assume that a defendant was entering a plea with a complete understanding of the

charge against him. Under Rule 11 the federal judge must personally determine the defendant's understanding. Because in *Ernst* we viewed this procedure as constitutionally mandatory upon state courts by virtue of *Boykin,* we overruled that portion of *State v. Strickland,* 27 Wis. 2d 623, 135 N.W.2d 295 (1965), which allowed trial courts to assume that defendant's counsel had fully explained the nature of the offense to the defendant which, in turn, obviated any need of personal inquiry with the defendant. Instead of the presumption, we made it mandatory upon the trial court as a matter of constitutional imperative to establish the accused's understanding of the nature of the crime and the range of punishment for it. *Ernst,* 43 Wis. 2d at 674.

Federal case law subsequent to *Ernst* indicates that our premise in *Ernst* was inaccurate. The Supreme Court in *Henderson* intimated that a state trial court may appropriately presume that in most cases defense counsel routinely explain the nature of the charge to the defendant. Counsel's explanation thereby would give the accused sufficient notice of the true nature of the charge. *Henderson,* 426 U.S. at 647. In *Lonberger,* 459 U.S. 422, the Court expressly applied the *Henderson* presumption to the factual determinations of the state court proceedings and concluded that the plea was made with an understanding of the law in relation to the facts and, therefore, was voluntary. *Lonberger,* 459 U.S. at 436–37.

Although *Ernst* may have been a logical reading of *Boykin* at the time *Ernst* was decided, we cannot ignore the conclusion to be drawn from *Henderson* and *Lonberger* that the requirements of Rule 11 are not procedures which are constitutionally incumbent upon

259

state courts when accepting a guilty or no contest plea. The Constitution sets forth the standard that a guilty or no contest plea must be affirmatively shown to be knowing, voluntary, and intelligent. It does not impose the requirements of Rule 11 on state courts. Even if this court does not revive that part of the presumption of *Strickland* utilized in *Lonberger*, we must conclude that the availability of such a presumption militates against our *Ernst* holding that Rule 11 procedures of personal inquiry are constitutionally required to be followed by state courts. We withdraw such language from *Ernst* and from subsequent cases which indicate otherwise. *See, Minniecheske,* 127 Wis. 2d at 244; *Cecchini,* 124 Wis. 2d at 209–10; *Bartelt,* 112 Wis. 2d at 480; *McAllister,* 54 Wis. 2d at 230; *Martinkoski v. State,* 51 Wis. 2d 237, 243, 186 N.W.2d 302 (1971).

We do not discard the mandatory requirement that trial judges undertake a personal colloquy with the defendant to ascertain his understanding of the nature of the charge, however. We merely determine that such communication is a statutory requirement, pursuant to sec. 971.08(1), Stats. That subsection reads:

> "971.08 **Pleas of guilty and no contest; withdrawal thereof.** (1) Before the court accepts a plea of guilty or no contest, it shall:
>
> "(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted; and
>
> "(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged."

We note that sec. 971.08 is modeled after the former Fed. R. Crim. Proc. 11. *See,* Comment to 1969 Wis. Laws 255. *McCarthy* discussed Rule 11 as it existed at the

time sec. 971.08 was enacted. The Supreme Court stated that Rule 11 "expressly directs the district judge to inquire whether a defendant . . . understands the nature of the charge against him and whether he is aware of the consequences of his plea." *McCarthy*, 394 U.S. at 464.[2] Although sec. 971.08 is not a constitutional imperative, the procedure of the statute nevertheless is designed to assist the trial court in making the constitutionally required determination that a defendant's plea is voluntary.[3] *Cf., id.* at 465.

■

Nor do we discard the general duties of the trial court prior to accepting a plea of guilty or no contest. Those duties are:

(1) To determine the extent of the defendant's education and general comprehension;

---

[2] The version of Rule 11 on which sec. 971.08 was based reads as follows:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." Fed. R. Crim. Proc. 11, 18 U.S.C. App. (1970).

[3] A violation of sec. 971.08, though itself not constitutionally significant, may have constitutional ramifications. A defendant's understanding of the nature of the charge is an important component of the voluntariness of a plea. *Henderson v. Morgan*, 426 U.S. 637, 645, n. 13 (1976). If a defendant's understanding of the nature of the charge is not evidenced in some manner, then the plea will not meet the constitutional standard of voluntariness.

(2) To establish the accused's understanding of the nature of the crime with which he is charged and the range of punishments which it carries;

(3) To ascertain whether any promises or threats have been made to him in connection with his appearance, his refusal of counsel, and his proposed plea of guilty;

(4) To alert the accused to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to a layman such as the accused;

(5) To make sure that the defendant understands that if a pauper, counsel will be provided at no expense to him, *Ernst,* 43 Wis. 2d at 674 (citing *State ex rel. Burnett v. Burke,* 22 Wis. 2d 486, 494, 126 N.W.2d 91 (1964)); and

(6) To personally ascertain whether a factual basis exists to support the plea. *Id.*

In this case Bangert challenges the sufficiency of only the second enumerated duty, which we have characterized as a statutory requirement pursuant to sec. 971.08(1)(a), States. The sixth obligation also has been codified. *See,* sec. 971.08(1)(b). Bangert asserts that the plea colloquy in this case fails to demonstrate on the record that he understood the elements of second-degree murder prior to the trial court's acceptance of the plea or that he exercised a knowledgeable waiver of his constitutional rights.

The record indicates the following discussion between the court and Bangert prior to the court's acceptance of his no contest plea:

"CHRISTIAN R. BANGERT EXAMINATION

"BY THE COURT:

"Q Mr. Bangert, you understand what is going on?

"A Yes, sir.

"Q An amended information has been furnished to me which now charges you with a second degree murder charge. And it's my understanding and the understanding of your two attorneys and the State that you are going to enter a plea of no contest to this charge, which is equivalent to a plea of guilty. Do you understand that?

"A That's correct.

"Q Are you doing this of your own free will?

"A Yes.

"Q There's been no threats?

"A No.

"Q There's been no promises? Have there been any promises?

"A No.
"MR. LAWSON [defense counsel]: The only promises, Your Honor, are those contained within our plea agreement, which I have reduced to a letter, and Mr. Bangert has received a copy of it. . . .
"MR. ROGERS [defense counsel]: Your Honor, we have advised Mr. Bangert that whatever promises are contained in that letter, which was written to Mr. Zemke confirming the understanding, that the court is not bound by anything therein, but I think the record should accurately reflect that he has had some promises made to him.

"Q (By the court) You understand that, Mr. Bangert?

"A Yes.

"Q That this court is not bound by any agreements that your attorneys made with the State of Wisconsin, but I'm free to do what I want to do or what I feel is right, do you understand that?

"A Yes, I understand that.

"THE COURT: Okay. The court, under the conditions as stated—I'm sure that you have advised him of his constitutional rights prior to the time that he's entering this plea?

"MR. LAWSON: Yes, we did, Your Honor.

"THE COURT: And you believe that he fully understands them?

"MR. LAWSON: Yes, I do.

"THE COURT: Okay. The court will accept your plea of no contest to the charge of second degree murder. This is contrary to Section 940.02(1)."

"CHRISTIAN R. BANGERT EXAMINATION CONTINUED

"BY THE COURT:

"Q Do you understand, Mr. Bangert, that the court accepting your plea, that this carries a maximum sentence of 20 years?

"A Yes, I do.

"THE COURT: Okay. Court will accept your plea. And the court wishes the record to reflect that the defendant is making his plea voluntarily, with no threat or any promises on the part of the court.

. . .

"THE COURT: . . . Is there anything I've omitted, gentlemen?

"MR. ZEMKE [district attorney] Yes, Your Honor, there are two things. For one, I don't know

that Mr. Bangert ever said no contest on the record himself. I mean I don't recall.

"THE DEFENDANT: No, I didn't.

"MR. ZEMKE: Okay. I think that should be—

"THE COURT: I asked you, did you plead no contest, and you said yes.

"THE DEFENDANT: Yes.

"THE COURT: Okay.

"MR. ZEMKE: The other— Excuse me.

"THE COURT: And you did that freely, no threats, no promises, right?

"THE DEFENDANT: Yes.

"THE COURT: All right. That's okay."

Both the state and the defendant agree that the plea colloquy is woefully inadequate. Nothing in the plea hearing transcript remotely establishes that Bangert understood the nature of the second-degree murder charge. The court neither recited the elements nor characterized the nature of the crime in a general manner. 

Likewise, the court did not affirmatively establish that the defendant understood the constitutional rights which he in effect would be waiving, including the right against self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *See, Boykin,* 395 U.S. at 243. *See also, Edwards v. State,* 51 Wis. 2d 231, 235, 186 N.W.2d 193 (1971). For a waiver of constitutional rights to be valid, the plea must be based on " 'an intentional relinquishment or abandonment of a known right or privilege.' " *McCarthy,* 394 U.S. at 466 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)). A plea may be involuntary either because the defendant does not have a complete understanding of the charge or because he does not understand the

nature of the constitutional rights he is waiving. *Henderson*, 426 U.S. at 645, n. 13. The plea colloquy in this case does not come close to establishing the *defendant's* understanding of either the charge itself or the constitutional rights he is waiving.

### B. *Procedures To Be Followed By Trial Court*

But merely concluding that the plea colloquy in this case was inadequate does not define the procedures which a trial court judge must follow in accepting a plea of guilty or no contest. Nor does it necessarily indicate that the defendant lacked the requisite understanding and knowledge to make his plea constitutionally valid.

Although the court must "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge," sec. 971.08(1)(a), Stats., the statute does not explain how that determination should be made. This court cannot overemphasize the importance of the trial court's taking great care in ascertaining the defendant's understanding of the nature of the charge. The prospect of imprisonment for a defendant "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused. . . ." *Boykin*, 395 U.S. at 243–44.

We have previously discussed the trial court's duty to ascertain a defendant's understanding of the nature of the charge. We merely reformulate the source of the duty from a constitutional requirement to a statutory imperative. In *McAllister*, 54 Wis. 2d at 230, this court held that the ascertainment of understanding must be made on the record. In *Martinkoski*, 51 Wis. 2d at 245, we stated that while there is a burden on the trial court

to establish a record showing the defendant's understanding of the charge, the form of the inquiry need not be inflexible. An understanding of the nature of the charge must include an awareness of the essential elements of the crime. *Cecchini,* 124 Wis. 2d at 212.

While we have not established inflexible guidelines which a trial court must follow in ascertaining a defendant's understanding of the nature of the charge, this court is of the opinion that the time has arrived to require a trial court to do more than merely record the defendant's affirmation of understanding pursuant to sec. 971.08(1)(a). As a function of our superintending and administrative authority over the circuit courts,[4] we now make it mandatory upon the trial judge to determine a defendant's understanding of the nature of the charge at the plea hearing by following any one or a combination of the following methods. We characterize this obligation as a duty to first inform a defendant of the nature of the charge or, alternatively, to first ascertain that the defendant possesses accurate information about the nature of the charge. The court must then ascertain the defendant's understanding of the nature of the charge as expressly required by sec. 971.08(1)(a). Which of the following methods is selected depends on the circumstances of the particular case,

---

[4] Article VII, sec. 3 of the Wisconsin Constitution states:

"**Supreme court; jurisdiction.** SECTION 3. [*As amended April 1977*] (1) The supreme court shall have superintending and administrative authority over all courts."

This authority is limited only by the necessities of justice. *In re Hon. Charles E. Kading,* 70 Wis. 2d 508, 519–20, 235 N.W.2d 409 (1975).

including the level of education of the defendant and the complexity of the charge.

First, the trial court may summarize the elements of the crime charged by reading from the appropriate jury instructions, *see,* Wis. J I—Criminal SM–32, Part IV (1985), or from the applicable statute. *See, e.g., Cecchini,* 124 Wis. 2d at 213. Second, the trial judge may ask defendant's counsel whether he explained the nature of the charge to the defendant and request him to summarize the extent of the explanation, including a reiteration of the elements, at the plea hearing. Third, the trial judge may expressly refer to the record or other evidence of defendant's knowledge of the nature of the charge established prior to the plea hearing. For example, when a criminal complaint has been read to the defendant at a preliminary hearing, the trial judge may inquire whether the defendant understands the nature of the charge based on that reading. A trial judge may also specifically refer to and summarize any signed statement of the defendant which might demonstrate that the defendant has notice of the nature of the charge.

We first note that this list is not necessarily exhaustive of the methods which a trial judge may exercise in satisfying the antecedent step to its statutory obligation to personally determine the defendant's understanding. But it is no longer sufficient for a trial judge merely to perfunctorily question the defendant about his understanding of the charge. Likewise, a perfunctory affirmative response by the defendant that he understands the nature of the offense, without an affirmative showing that the nature of the crime has been communicated to him or that the defendant has at some point expressed his knowledge of the nature of

the charge, will not satisfy the requirement of sec. 971.08, Stats.

Whether the trial court communicates the elements of the crime at the plea hearing or whether the court refers to a document or portion of the record predating the plea hearing, the operative time period for determining the defendant's understanding of the nature of the charge remains the plea hearing itself. The defendant must understand the nature of the crime at the time of the taking of the plea. *Cecchini,* 124 Wis. 2d at 201.

In essence, we are reiterating the statutory duty placed on the trial courts to ascertain a defendant's understanding of the nature of a charge, sec. 971.08(1)(a), Stats. But we go beyond that duty to establish a mandatory obligation on the trial court to first inform the defendant of the charge's nature or, instead, to ascertain that the defendant in fact possesses such information.

A defendant's mere affirmative response that he understands the nature of the charge, without establishing his knowledge of the nature of the charge, submits more to a perfunctory procedure rather than to the constitutional standard that a plea be affirmatively shown to be voluntarily and intelligently made. Form would be elevated over substance. Understanding must have knowledge as its antecedent; knowledge, like understanding, cannot be inferred or assumed on a silent record. *Cf., Boykin,* 395 U.S. at 242, 243. Conversely, it is not enough merely to inform the defendant or point to a portion of the transcript or other evidence which indicates that the defendant possesses knowledge of the nature of the charge; the court must also ascertain the defendant's understanding of that information, sec. 971.08(1)(a), Stats. The duty to inform, al-

though not expressly required by sec. 971.08 , is a logical outgrowth of the constitutional standard that a defendant's plea be knowingly, voluntarily, and intelligently entered. The duty is complementary to the obligation of the trial court to ascertain a defendant's understanding of the nature of the charge. Like the other *Ernst* requirements, it is made mandatory on the trial courts.

The trial court also failed to ascertain on the record Bangert's understanding of his constitutional rights which he was necessarily waiving by entering a plea of no contest. A person must know and understand that constitutional rights are waived by the plea in order for the plea to be voluntarily and intelligently made. *Edwards,* 51 Wis. 2d at 234. The defendant need not specifically waive each right, but the record or other evidence must show that he entered his plea voluntarily and knowingly, *see, id.* at 235–36, with understanding of the rights he was waiving.

The trial judge in this case did not ascertain that the defendant knew and understood which constitutional rights he was waiving. The plea hearing record indicates only that Bangert's counsel believed that Bangert knew and understood which constitutional rights Bangert was waiving. Defense counsel may not speak for the defendant; the defendant must affirmatively state his own knowledge and understanding when he is capable of doing so.

Henceforth, we will also require as a function of our supervisory powers that state courts at the plea hearing follow the provisions set forth in Wis. J I—Criminal SM–32 (1985), Part V, Waiver of Constitu-

tional Rights,[5] or specifically refer to some portion of the record or communication between defense counsel and defendant which affirmatively exhibits defendant's knowledge of the constitutional rights he will be waiving. The court must then, as before, ascertain

---

[5] Part V of SM–32 reads as follows:

"By pleading guilty you admit that you committed the crime and, thus, you relieve the state of proving at a trial that you committed the crime, and by pleading guilty you also waive—that is, you give up—important constitutional rights.

"First, you give up your right to have the state prove that you committed each element of the crime. The state must convince each member of the jury beyond a reasonable doubt that you committed the crime. Do you understand that?

"You have a constitutional right not to incriminate yourself, which means, you have a right not to admit to a crime, not to say anything that will subject you to a criminal penalty. By pleading guilty you waive this privilege not to incriminate yourself, and if the court accepts your plea of guilty, you will be convicted and the court can impose sentence against you.

"Do you understand that?

"You have a constitutional right to be tried by a jury. If your plea of guilty is accepted by the court, you will not be tried by a jury. That is, you will waive—give up—a jury trial.

"Do you understand that?

"You have a constitutional right to confront your accusers, which means you have the right to face the witnesses against you, to hear their sworn testimony against you, and to cross-examine them by asking them questions to test the truth and accuracy of their testimony. If the court accepts your plea of guilty, you surrender your right to confront your accusers.

"Do you understand that?

"You have the right to present evidence in your own behalf and to require witnesses to come to court and testify for you.

"Do you understand that?

"Knowing that by pleading guilty you waive your constitutional right to a trial by jury, your constitutional right not to incriminate yourself, and your constitutional right to confront the witnesses against you and to subpoena witnesses, do you still wish to plead guilty?"

whether the defendant understands he will be waiving certain constitutional rights by virtue of his guilty or no contest plea. *Cf., Boykin,* 395 U.S. at 243. The express duty to inform the defendant of the constitutional rights which he will be waiving, or to ascertain that the defendant possesses such knowledge, may be considered a seventh duty to be followed by the trial courts. *See, Ernst,* 43 Wis. 2d at 674. Whether the plea is voluntary will in part depend on whether the defendant understands the nature of the constitutional protections he is waiving. *Henderson,* 426 U.S. at 645, n. 13. It is incumbent upon the trial court to inform the defendant of his rights and ascertain that he understands they are being waived.

Although Bangert questions only the adequacy of the nature of the charge and constitutional waiver colloquy of the plea hearing, we urge trial courts to closely follow all of the procedures for the taking of a guilty or no contest plea as set forth at Wis. J I—Criminal SM–32 (1985). We have previously expressed this recommendation, *Bartelt,* 112 Wis. 2d at 483–84, n. 3, *Minniecheske,* 127 Wis. 2d at 245, and believe that careful adherence to SM–32 will satisfy the constitutional standard of a voluntary and knowing plea, as well as the *Ernst* requirements, the procedure of sec. 971.08, Stats., and the other mandatory procedures described herein.

C. *Remedy For Violation Of Statutory Or Other Mandatory Procedures*

The question remains, what is the proper remedy for failure to follow: (a) the procedures set forth in sec. 971.08(1); (b) the additional procedures which we now make mandatory; and (c) those procedures already enu-

merated and mandated in *Ernst? See, e.g., Ernst,* 43 Wis. 2d at 674. Bangert cites *Cecchini* and *McAllister* for the proposition that the trial court's ascertainment of a defendant's understanding of the charge must be limited on review to the plea hearing transcript. *Cecchini,* 124 Wis. 2d at 210, 211. The court hearing a motion to withdraw a plea "may not search the entire record for evidence of a knowing and voluntary [plea]." *Id.* at 210.

We are now of the opinion that our decision in *Cecchini* circumscribed too narrowly the postconviction review of the voluntariness of a guilty or no contest plea. Because it was based in part on the faulty *Ernst* foundation concluding that Rule 11 was constitutionally mandated upon the states, the *Cecchini* decision incorrectly concluded that the failure of a trial court to ascertain a defendant's understanding of the nature of the charge on the record *at the plea hearing* necessitated that the plea be found involuntary and unknowing, in violation of the *Boykin* constitutional standard. *Cf., North Carolina v. Alford,* 400 U.S. 25, 29, n. 3 (1970) ("Since the record in this case affirmatively indicates that Alford was aware of the consequences of his plea of guilty and of the rights waived by the plea, no issues of substance under *Boykin v. Alabama,* 395 U.S. 238 (1969) would be presented. . . ."). *See also, Wood v. Morris,* 87 Wash. 2d 501, 507, 554 P.2d 1032, 1036 (1976) (construing *Boykin* to allow supplementation of an otherwise defective plea-taking record in a postconviction proceeding). We have held above, however, that a trial judge's failure to personally ascertain a defendant's understanding of the nature of the charge at the plea hearing constitutes a violation of sec. 971.08, Stats., not a constitutional violation. We believe, in

light of the remedy for a violation of sec. 971.08(1) that this court now proposes, that it is inappropriate to restrict a reviewing court to the plea hearing transcript to determine the voluntariness of a plea on a motion to withdraw under sec. 974.02. We therefore overrule that part of *Cecchini* which held that a reviewing court may look only to the plea hearing transcript to determine the defendant's understanding of the nature of the offense and, consequently, the voluntariness of the plea. We implement a new approach which serves as a remedy for both a violation of sec. 971.08 and the mandatory procedures we now require.

Whenever the sec. 971.08 procedure is not undertaken or whenever the court-mandated duties are not fulfilled at the plea hearing, the defendant may move to withdraw his plea. The initial burden rests with the defendant to make a *prima facie* showing that his plea was accepted without the trial court's conformance with sec. 971.08 or other mandatory procedures as stated herein. *See, Roddy v. Black,* 516 F.2d 1380, 1384 (6th Cir. 1975); *Wood v. Morris,* 87 Wash. 2d at 507, 554 P.2d at 1036. Where the defendant has shown a *prima facie* violation of sec. 971.08(1)(a) or other mandatory duties, and alleges that he in fact did not know or understand the information which should have been provided at the plea hearing, the burden will then shift to the state *to* show by *clear and convincing* evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance. *Roddy,* 516 F.2d at 1384; *Wood,* 87 Wash. 2d at 507, 554 P.2d at 1036. The state may then utilize any evidence which substantiates that the plea was knowingly and volun-

tarily made. In essence, the state will be required to show that the defendant in fact possessed the constitutionally required understanding and knowledge which the defendant alleges the inadequate plea colloquy failed to afford him. *See, e.g., Wood,* 87 Wash. 2d at 507, 554 P.2d at 1036. The state may examine the defendant or defendant's counsel to shed light on the defendant's understanding or knowledge of information necessary for him to enter a voluntary and intelligent plea. *See, e.g., Roddy,* 516 F.2d at 1385–86. The state may also utilize the entire record to demonstrate by clear and convincing evidence that the defendant knew and understood the constitutional rights which he would be waiving. *Edwards,* 51 Wis. 2d at 235–36 (record as a whole showed that defendant understood constitutional rights he waived, and that is sufficient).

We thus hold that when a defendant shows a *prima facie* violation of sec. 971.08 or a failure of the court to meet other enumerated obligations, including the duty to inform him of his constitutional rights or a failure to ascertain his knowledge thereof, the state bears the burden of showing by clear and convincing evidence that the plea was knowingly and voluntarily made. *See, Collins v. Israel,* 538 F.Supp. 1211, 1215 (E.D. Wis. 1982).

We perceive that this remedy which switches the burden of production and persuasion to the state will encourage the prosecution in a plea hearing proceeding to assist the trial court in meeting its sec. 971.08 and other expressed obligations. On the other hand, permitting the state to show by clear and convincing evidence that the totality of the circumstances demonstrates a knowing and voluntary plea in fact achieves the requirement of the constitutional standard. To en-

able a court on a motion to withdraw to consider only the plea hearing transcript essentially raises procedural form over constitutional substance. A postconviction review of all relevant evidence may reflect that the plea was constitutionally sound, even though the colloquy did not meet statutory procedures or satisfy obligations stemming from our supervisory powers.

## D. *Retroactivity*

We are next faced with the issue whether to retroactively apply the new postconviction procedure and the mandatory duty to inform the defendant of the nature of the charge and of the constitutional rights being waived. The criteria used in cases formulating a new rule of criminal procedure include: " '(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' " *Solem v. Stumes,* 465 U.S. 638, 643 (1984) (quoting *Stovall v. Denno,* 388 U.S. 293, 297 (1967)); *see also, In the Interest of N.E.,* 122 Wis. 2d 198, 209, 361 N.W.2d 693 (1985).

In analyzing the purpose to be served by the new standard, we generally focus on the utility of the standard in relation to the truth-finding process at trial. *Stumes,* 465 U.S. at 643–45; *see also, In the Interest of N.E.,* 122 Wis. 2d at 209, 210. The new rule that shifts the burden of persuasion to the state has little to do with the accuracy of a criminal trial. More properly, the rule may be characterized as an aid to ensure that the trial court follows at the plea hearing the dictates of sec. 971.08 and the obligation to ascertain that the defendant possesses knowledge of the nature of the

charge and of his constitutional rights which he will be waiving if the plea is accepted. Likewise, these requirements which trial judges must specifically undertake on the record are designed to meet the constitutional standard of a voluntary and knowing waiver. They do not directly affect the truth-finding process at trial.

The degree of reliance on the old standard—in this case, the *Cecchini* rule of limiting review to the plea hearing transcript—is analyzed "in terms of whether the new decision was foreshadowed by earlier cases or [is] a 'clear break with the past.' " *Stumes,* 465 U.S. at 646 (footnote omitted). The *Cecchini* rule itself is a relatively new rule insofar as it definitively expressed the extent to which a reviewing court may consider other parts of a record. The rule that the state carries the burden of proof when sec. 971.08(1)(a) is violated or when the court fails to inform the defendant was not foreshadowed by prior case law. The mandate upon the trial court to inform the defendant was foreshadowed to some extent in *Cecchini.* In that case we suggested,

> "One way to assure that the defendant understands the nature of the charge is for the trial court to summarize the elements of the crime charged, relating them to the facts of the case. A simple method for doing so is to refer to the uniform jury instructions. These instructions will be useful in advising the defendant of a crime's requisite elements in language which is understandable." *Cecchini,* 124 Wis. 2d at 213 (footnote omitted).

However, *Cecchini* was decided after the plea hearing in this case and, therefore, provided no foreshadowing to the trial court in this case of the requirement that a trial court expressly undertake to inform the defend-

ant or ascertain his knowledge with respect to the nature of the charge and his constitutional rights being waived.

Last, we consider the effect of a retroactive application of the new rules on the administration of justice. The fact that a violation of sec. 971.08(1)(a) or the attendant duty to inform results in a postconviction review with the burden on the state to show a voluntary and knowing plea potentially could have a significant and adverse effect on the administration of justice. Defendants who previously had the burden of showing a "manifest injustice" in these instances before a guilty plea could be withdrawn, *see, State v. Reppin,* 35 Wis. 2d 377, 385–86, 151 N.W.2d 9 (1967), might move the court to withdraw their pleas. A subsequent evidentiary hearing "would be hampered by problems of lost evidence, faulty memory, and missing witnesses." *Stumes,* 465 U.S. at 650.

Moreover, we conclude that the administration of justice would best be served by making the new state-burden rule prospective for all postconviction motions relating to plea hearings which will occur after the mandate of this opinion. We choose the same date for requiring the trial court to expressly inform the defendant of the nature of the charge and inform him of his constitutional rights being waived or, alternatively, expressly ascertain that the defendant possesses such information.

We reiterate that the duty to comply with the plea hearing procedures falls squarely on the trial judge. We understand that most trial judges are under considerable calendar constraints, but it is of paramount importance that judges devote the time necessary to ensure that a plea meets the constitutional standard. The

278

plea hearing colloquy must not be reduced to a perfunctory exchange. It demands the trial court's "utmost solicitude." *Boykin,* 395 U.S. at 243–44. Such solicitude will serve to forestall postconviction motions, which have an even more detrimental effect on a trial court's time limitations than do properly conducted plea hearings. Intentional failure to follow such mandate could be grounds for judicial discipline.

The prosecution should play a supporting role in assisting the trial court in implementing the procedures which lead to an affirmative showing of a knowing, voluntary, and intelligent plea. In order to best represent his client, defense counsel, too, is obligated to inform the defendant of the nature of the charge, of his constitutional rights which will be waived by virtue of the plea, and of the general legal effect of the guilty or no contest plea.[6] The defendant also has an important role during the plea hearing; if he is uncooperative or equivocal in communicating with the trial judge, the plea should not be accepted. Instead, the case immediately should be set for trial. *Minniecheske,* 127 Wis. 2d at 246–47; *id.* at 247 (Ceci, J., concurring).

---

[6] This duty is not only a logical outgrowth of the obligation to provide effective assistance of counsel, it is also a requirement found in the Wisconsin Supreme Court Rules. A defense lawyer has a "duty to advise his or her client fully on whether a particular plea to a charge appears to be desirable . . . ." SCR 20.34(2)(d). "A lawyer should exert his or her best efforts to ensure that decisions of his or her client are made only after the client has been informed of relevant considerations." SCR 20.34(2)(e). A defense lawyer, to fulfill these requirements, must advise his client of the nature of the charge and of the attending legal consequences of a plea.

E. *Application*

We now are prepared to turn to the facts of this case. Bangert asserts that the plea colloquy conducted by Judge Cirilli was inadequate. The plea hearing transcript does not demonstrate a personal, voluntary waiver of Bangert's constitutional rights and fails to show an understanding of the nature of the charge, he argues. The state argues that even if the plea colloquy is inadequate, the totality of the circumstances on the record indicates that the defendant actually understood the nature of the charge and was aware of the constitutional rights he was waiving.

We observe that the trial court did not abide by sec. 971.08, Stats. He did not personally address the defendant at the plea hearing to determine that Bangert's plea was being made voluntarily with understanding of the nature of the charge. The court merely restated that Bangert was being charged with second-degree murder and stated that it was the *court's* understanding that Bangert would plead no contest. The court then obliquely asked, "Do you understand that?" This is the closest which the court came to ascertaining that the defendant understood the nature of the second-degree murder charge. The elements of the crime were not discussed; no jury instructions were read. The court did not refer to prior portions of the record which might reflect the defendant's understanding of the nature of the charge. *See, e.g., Cecchini,* 124 Wis. 2d at 213. Defense counsel was not asked whether the nature of the charge was explained to the defendant or whether the defendant understood the nature of the charge.

In addition, the court never asked the defendant whether he understood the constitutional rights which

he would be waiving. The court only questioned the defense counsel whether he believed that defendant understood his rights.

Although a defendant's understanding of the nature of the charge is a critical component of a voluntary plea, violation of the procedure outlined in sec. 971.08(1)(a), Stats., does not amount to a violation of the constitutional standard that a voluntary and intelligent plea be affirmatively shown. Rather, the violation of the statute is one of procedure designed to meet the constitutional standard. Again, *Boykin* does not mandate the procedures which a state must follow to meet the standard.

Because we overrule the *Cecchini* holding that the reviewing court on a motion to withdraw may only consider the plea hearing transcript, and because the new rule is prospective after the date of this decision, we decide this case under pre-*Cecchini* law. Accordingly, we hold that the trial court did not err in considering the totality of the circumstances at the evidentiary hearing in determining that defendant's plea was knowingly and intelligently entered at the plea hearing.

We noted in *Cecchini* that it was uncertain whether a reviewing court may examine the entire record to determine whether the defendant possessed an understanding of the nature of the charge. *Cecchini*, 124 Wis. 2d at 211. This court in *Spinella v. State*, 85 Wis. 2d 494, 502, 271 N.W.2d 91 (1978), however, reviewed the entire record to demonstrate that the defendant possessed an understanding of the nature of the charge at the time the court accepted the guilty plea. *See also, Bressette v. State*, 54 Wis. 2d 232, 238,

194 N.W.2d 635 (1972) (the court "carefully reviewed the entire record" in rejecting a guilty plea challenge).

Pre-*Cecchini* law, including *Spinella,* indicates that the entire record may be considered. Although we interpreted *McAllister* to limit an examination of the record to the plea hearing transcript, *Cecchini,* 124 Wis. 2d at 211, federal case law predating *Cecchini* suggests that the totality of the circumstances may be considered to determine whether the substance of the charge was conveyed to the defendant. *See, Henderson,* 426 U.S. at 644.

*McAllister* relied on the *Ernst* interpretation of *Boykin* that Rule 11 was mandatory upon state courts as a matter of constitutional necessity. *See, McAllister,* 54 Wis. 2d at 228. The *McAllister* court expressed that a trial court's failure to meet its duty to determine the defendant's understanding of the nature of the charge made the plea and the record "fatally defective," such that reversal was required. *Id.* at 230. We have withdrawn the language from the *Ernst* line of cases which indicates that Rule 11 is constitutionally incumbent upon state courts. Therefore, the mere inadequacy of the plea colloquy does not by itself necessitate withdrawal of a plea. Although *McAllister* does not expressly address the issue of what part of the record a reviewing court may examine on a motion to withdraw, we overrule it insofar as it infers that a reviewing court may consider only the plea hearing transcript. It still reflects good law to the extent that it states that a trial judge has an obligation at the plea hearing to ascertain the defendant's understanding of the nature of the charge. *See, id.* at 229.

The inquiry on review should not focus on a "ritualistic litany" of formal elements, but should address

whether the defendant received real notice of the nature of the charge. *Henderson,* 426 U.S. at 644–45. Although a defendant's understanding of the nature of the charge must be measured at the time the plea is entered, *Cecchini,* 124 Wis. 2d at 210, the reviewing court may look to the entire record to make such measurement. Similarly, case law prior to this decision states that a reviewing court may consider the record as a whole to show that the defendant understood the waiver of his constitutional rights. *Edwards,* 51 Wis. 2d at 235–36.

A defendant must ordinarily show a manifest injustice in order to be entitled to withdraw a guilty or no contest plea. *State v. Rock,* 92 Wis. 2d 554, 558, 285 N.W.2d 739 (1979). When a defendant establishes a denial of a relevant constitutional right, withdrawal of the plea is a matter of right. The trial court reviewing the motion to withdraw has no discretion in the matter in such an instance. *Id.* at 559. In this case, the trial court on May 28, 1985, made findings of fact and conclusicns of law, including the conclusion that Bangert's plea of no contest was voluntarily and intelligently entered on May 25, 1983. On appellate review, the issue of whether a plea was voluntarily and intelligently entered is a question of constitutional fact. *Cf., Miller v. Fenton,* — U.S. —, —, 106 S.Ct. 445, 450 (1985) (voluntariness of a confession is not an issue of fact, but is a legal question requiring independent factual determination). We review constitutional questions independently of the conclusion of the lower courts. *State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984). The trial court's findings of evidentiary or historical facts will not be upset on appeal unless they are con-

trary to the great weight and clear preponderance of the evidence. *Id.*

Applying this standard to the case at bar and upon review of the entire record, we conclude that Bangert's no contest plea was voluntarily and intelligently entered at the plea hearing. The record reflects that Bangert's counsel described the elements of second-degree murder in a five-page letter to Bangert dated May 20, 1983. The relevant portion of that letter reads as follows:

> "Second degree murder. Second degree murder is committed by one who causes the death of another human being by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life. The conduct must be dangerous in and of itself, and the defendant must exhibit a depraved mind, which means having an utter lack of concern for the life and safety of another and acting without justification or excuse. However, there does not have to be a specific intent to kill. The penalty for second degree murder is imprisonment for up to twenty years."[7]

---

[7] This letter served the purpose of informing Bangert of the nature of the charge by stating the elements of second-degree murder. Section 940.02, Stats., provides:

"**940.02 Second-degree murder.** Whoever causes the death of another human being under either of the following circumstances is guilty of a Class B felony:

"(1) By conduct imminently dangerous to another and evincing a depraved mind, regardless of human life; or

"(2) As a natural and probable consequence of the commission of or attempt to commit a felony."

The trial court found that Bangert was "of at least average intelligence, well-informed and very articulate."

The letter, which also outlined for Bangert the plea negotiations between the district attorney and defense counsel, was reviewed by Bangert prior to his entering his no contest plea. Bangert's counsel at the plea hearing testified at the postconviction hearing that he believed that Bangert understood that second-degree murder did not require Bangert to admit that he intentionally killed the police officer.

We also conclude that Bangert was aware of the constitutional rights which he was waiving. The record indicates that his defense counsel stated at the postconviction proceeding that Bangert was advised of such rights by defense counsel. The district attorney's questioning of Bangert at the postconviction hearing indicated that Bangert was aware that he was waiving his right to a trial by jury, his right to cross-examine witnesses, and his right against self-incrimination. Bangert testified that his defense counsel explained every right which he would be waiving by virtue of his no contest plea.

The defendant also completed and signed a three-page form in which he stated that he did understand the nature of the charge against him. The form identified the constitutional rights which Bangert would waive by virtue of his no contest plea. Bangert marked his initials next to each of the constitutional rights. Finally, defendant marked his initials next to the statement reading, "I have read this entire questionnaire and understand its contents. I have initialed or completed each item as proof of my understanding." The form bears the signature of Christian R. Bangert and is dated May 25, 1983.

Defendant does not claim that the plea hearing was inadequate for reasons other than the trial court

failed to engage in a proper colloquy which might have ascertained his understanding of the nature of the charge and determined his understanding of his constitutional rights. We do not review the record for any other purposes, therefore. Under our *de novo* review, we conclude as the trial court did that Bangert's no contest plea was knowingly and voluntarily entered.

## II.

Bangert next asserts that the state violated the terms of the plea agreement and that those violations entitle him to withdraw the plea.

The plea agreement was embodied in a letter dated May 24, 1983. The letter was drafted by counsel who represented Bangert at the plea hearing, Richard Lawson, and addressed to the Eau Claire county district attorney, Rodney Zemke. The state and Bangert later stipulated that the letter set forth the provisions of the plea agreement.

One relevant provision of the agreement stated that the prosecution would not mention the word maximum in connection with the sentencing recommendation:

> "The State would not be obligated to assert that Mr. Bangert should receive any credit for his plea, etc., in the sentence determination. Moreover, the State would reserve the right to recommend a 'very long period of prison time,' *but you would not directly or indirectly mention the word maximum* in connection with your sentence recommendation." (Emphasis added.)

Another provision addressed the state's posture regarding Bangert's future parole requests:

"While you do not wish to so state on the record at this time, you are agreeing as to the future not to oppose any parole requests from Mr. Bangert."

Bangert claims that the first breach of the plea agreement occurred at the sentencing hearing. Assistant District Attorney Michael Rajek, appearing for the state, told the trial court,

"Pursuant to plea agreements made with Mr. Zemke and the lawyers for the Defendant, the State is not going to ask the Court to impose the maximum sentence. That was the agreement Mr. Zemke and the Defendant had. I would point out to the Court again that this community is watching this proceeding. . . ."

Bangert argues that the assistant district attorney literally breached the agreement when he used the word maximum in his sentencing recommendation.

The second alleged breach occurred when Assistant District Attorney Rajek sent a letter dated September 20, 1983, to the parole board, opposing the parole of Bangert. Rajek wrote the letter in response to the board's inquiry and after consulting with District Attorney Zemke, who negotiated the plea bargain for the state. The letter stated in part: "This prosecutor strongly opposed *ever* paroling this defendant." (Emphasis in original.) The letter opposing parole was in the defendant's parole file during two parole hearings, October 18, 1983, and August 10, 1984. Parole was deferred at both hearings. Ultimately, the letter was withdrawn from the defendant's file, and another letter which stated that the district attorney's office took no position regarding the defendant's parole was substituted.

287

The parties stipulated that the September 20, 1983, letter was received by the parole board, which noted the letter's contents in Bangert's parole file. The parties also stipulated that the terms of the plea agreement as set forth in the May 24, 1983, letter were intended to bind the state and all of its agents.

The evidentiary hearing on Bangert's motion to withdraw concerning the breach issues was held on February 12, 1985. The motion was denied on May 28, 1985, in an order which contained findings of fact and conclusions of law. Judge Cirilli found that, in accordance with the terms of the plea agreement, the district attorney's office did not recommend a maximum term of incarceration. He concluded that the state did not breach that provision of the agreement. He also concluded that, even if the letter opposing parole was a breach of the relevant provision, the breach was neither material nor substantial. *See, State v. Rivest,* 106 Wis. 2d 406, 414, 316 N.W.2d 395 (1982). The trial court determined that any breach that might have occurred was remedied by the expungement of the September 20, 1983, letter from defendant's file and by replacing it with a letter informing the parole board that the state would not take a position in the future concerning the parole application of the defendant.

As we stated above, a defendant normally will not be allowed to withdraw a plea of guilty or no contest unless he demonstrates the existence of a manifest injustice. *Rock,* 92 Wis. 2d at 558.

> "Permitting withdrawal of a guilty plea is within the trial court's discretion so the test on [appellate] review is whether the court abused its discretion in

denying the motion." *White v. State,* 85 Wis. 2d 485, 491, 271 N.W.2d 97 (1978).

In order to sustain a discretionary determination, the determination must be made upon the facts of record and in reliance on the appropriate and applicable law. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). The applicable law in this case is that a plea agreement may be vacated where a material and substantial breach of the agreement has been proved. *Rivest,* 106 Wis. 2d at 414. A party seeking to vacate a plea agreement has the burden of establishing "both the breach, and that the breach is sufficiently material to warrant releasing the party from its promises (prosecution or defense) before the same judge who accepted the plea, whenever possible." *Id.* This burden must be established by clear and convincing evidence. *Rock,* 92 Wis. 2d at 559.

A breach of a plea agreement does not give rise to a *per se* right to withdraw a plea. A material and substantial breach, however, amounts to a manifest injustice and would result in the vacating of the plea agreement and the withdrawal of the plea of no contest.

We do not find that Judge Cirilli abused his discretion in concluding that the state did not breach the sentence recommendation provision. The agreement was, he found, that the state not recommend a maximum sentence at the sentencing hearing. He also found that no such recommendation was made. Although a technical breach of the agreement might have occurred when Assistant District Attorney Rajek mentioned the word maximum in relating that the state was not recommending the maximum penalty, we conclude that such a technical breach did not constitute a substantial

and material violation of the plea agreement. This conclusion is buttressed by the fact that defense counsel failed to raise an objection to the assistant district attorney's use of the word maximum at the sentencing hearing. The rule that a breach be material before the agreement may be vacated and the plea may be withdrawn is specifically designed to foreclose a party from relying on technical but nonprejudicial deviations from an agreement as a basis of withdrawal, as in this case. A breach must not merely be technical, but rather must deprive the party of a substantial and material benefit for which he bargained.[8] The trial court applied the applicable law and did not abuse its discretion by denying defendant's motion on this issue.

Nor do we find that the trial court abused its discretion in determining that the letter opposing parole was insignificant. Judge Cirilli assumed for the sake of argument that the letter opposing parole constituted a breach of the plea agreement.[9] Nevertheless, he found the breach in this instance to be neither material nor substantial. There is sufficient support in the record, including the testimony of Fred Hinickle, parole board chairman, to uphold such a conclusion. In fact, Bangert's early parole was so unlikely that Hinickle

---

[8] *Cf., Santobello v. New York,* 404 U.S. 257, 262 (1971) (when a plea significantly rests on a promise of the prosecutor such that the inducement was part of the consideration, the promise must be fulfilled).

[9] Judge Cirilli only assumed, and did not conclude, that the letter opposing parole was a breach because he was unsure whether the letter expressing the plea agreement bound Zemke only, or whether it bound the entire district attorney's office. The parties stipulated, however, that the intent of the plea agreement was to bind not only Zemke, but the state and all of its agents as well, including Rajek.

testified that Bangert's early parole was very unlikely. During the eight years in which he had been associated with the parole board, Hinickle testified, no prisoner convicted of second-degree murder had ever been paroled after serving only twenty-eight months in prison, the amount of time Bangert had served at the time of the hearing. In addition, Hinickle testified that parole decisions are also based on an examination of the circumstances surrounding the crime—in this case, the second-degree murder of a police officer. Against this background, the trial court found the defendant was unable to present clear and convincing evidence that the breach had materially affected his bargain. The trial court did not abuse its discretion.

Moreover, the breach was remedied by the state when it excised the letter opposing Bangert's parole from defendant's file and replaced it with a letter expressing that the district attorney's office takes no position on defendant's parole. That act assured that whatever negligible effect which the September 20, 1983, letter may have had on the parole board's deferral decisions, if any, the breach was insubstantial. In this case, the substitution of the letters had been effected without court order prior to the motion hearing on February 12, 1985. That act served to make the breach only temporary in nature and insubstantial in effect.

Finally, we note that the lack of prejudice to defendant is evidenced by the fact that Bangert was advised by his defense counsel that he would likely serve the entirety of his mandatory time. In the same letter in which counsel described the elements of second-degree murder to Bangert, counsel wrote,

"The three probation officers [questioned by defense counsel] felt an individual in your circumstances

would actually serve most or all of the time necessary to get to the mandatory release date [on a second-degree murder conviction]."

This court takes no pleasure in reviewing broken plea bargains. Prosecutors must maintain constant vigilance to see that their promises are fairly kept. If the bargain in this case had not been effected in a timely manner and without prejudice to the defendant, this court would have had no choice but to allow the defendant to withdraw his plea. But we do not require the vacating of plea agreements where the breach is not material or significant. If specific performance of the terms of this plea agreement would not have been possible without substantial erosion of the benefits promised to Bangert, a withdrawal of his no contest plea would have been the only available remedy. When either specific performance of the bargain or withdrawal of the plea is available as a remedy, the remedy chosen is up to the discretion of the court. *Santobello v. New York,* 404 U.S. 257, 263 (1971); *id.* at 267 (Douglas, J., concurring).

### III.

Bangert next argues that the second change of venue ordered by the trial court was unconstitutional and should be vacated.

The defendant moved the trial court for a change in place of trial, pursuant to sec. 971.22, Stats. The motion was granted after an evidentiary hearing was held on the matter. The place of trial was ordered moved from Eau Claire county to Douglas county. Four months later, the state motioned the trial court to reconsider its order moving the trial to Douglas county.

After another evidentiary hearing, the trial court ordered the trial moved back to Eau Claire county and stated that, pursuant to sec. 971.225, a jury was to be selected from Douglas county for the trial. The defendant pled no contest to a second-degree murder charge before a jury was ever selected.

Bangert claims that the trial court lacked subject matter jurisdiction upon return to Eau Claire county and that it lacked authority to grant the state's motion for reconsideration because the state lacked statutory authority to file the motion and because sec. 971.22(3), Stats., precludes a second change of venue. Additionally, the defendant contends that the second change of venue violated his constitutional rights, presumably art. I, sec. 7 of the Wisconsin Constitution, and thereby caused him to plead no contest.

We conclude that the defendant waived nonjurisdictional defects by virtue of his no contest plea. The general rule is that a plea of guilty or its functional equivalent, no contest, constitutes a waiver of nonjurisdictional defects and defenses. *See, State v. Riekkoff,* 112 Wis. 2d 119, 123, 332 N.W.2d 744 (1983); *Mack v. State,* 93 Wis. 2d 287, 293, 286 N.W.2d 563 (1980). Venue is not a question of personal or subject matter jurisdiction. *Voight v. Aetna Casualty & Surety Co.,* 80 Wis. 2d 376, 390, 259 N.W.2d 85 (1977); *see also, Shopper Advertiser v. Wisconsin Department of Revenue,* 117 Wis. 2d 223, 230, 344 N.W.2d 115 (1984); *cf., Dolan v. State,* 48 Wis. 2d 696, 703, 180 N.W.2d 623 (1970); (defendant pled guilty; venue argument raised for first time on appeal; defendant thus waived whatever venue objections he may have had).

On the merits, we conclude that the defendant misperceives the nature of his constitutional rights and the scope of sec. 971.22(3), Stats.

Article I, sec. 7 of the Wisconsin Constitution provides:

> **"Rights of accused.**
> SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law."

The only right afforded the defendant under sec. 7 regarding venue is the right to a "trial by an impartial jury of the county or district wherein the offense shall have been committed . . . ." The defendant has no right to choose the county where he will be tried. He has only a right to be tried in the county where the offense was committed. In this case, the defendant waived that right when he requested a change of venue. Even absent such a waiver, the defendant has no constitutional basis for claiming that a trial in the county wherein the offense was committed violates his rights. Only a change of original and proper venue[10] over the defendant's objection to such a change has been held to

---

[10] *See*, sec. 971.19(1), Stats., which provides: "(1) Criminal actions shall be tried in the county where the crime was committed, except as otherwise provided."

amount to a constitutional violation. *See, State v. Mendoza,* 80 Wis. 2d 122, 258 N.W.2d 260 (1977). The defendant suffered no constitutional wrong when the court returned the trial and proceedings to their place of origin in Eau Claire county.

The defendant's claim that the trial court lacked subject matter jurisdiction must similarly fall. Again, venue is not a question of subject matter jurisdiction. *Shopper Advertiser,* 117 Wis. 2d at 230. Relying on *Wheeler v. State,* 24 Wis. 52 (1869), and *State v. Mendoza,* 80 Wis. 2d 122, the defendant correctly states that this court has voided proceedings subsequent to a change of venue that violated the defendant's right under the Wisconsin Constitution, art. I, sec. 7. In both cases, the defendants unsuccessfully objected to a change of venue *from* the proper county, i.e., the place where the offense was committed. The proceedings held in the new counties were determined to be void. *Wheeler,* 24 Wis. at 54; *Mendoza,* 80 Wis. 2d at 145. In this case, however, the defendant has shown no violation of his right to have the trial conducted in the county where the offense was committed. In fact, Judge Cirilli returned the trial to the county where the offense was committed. Bangert's claim that the trial court lacked jurisdiction to take his plea and that his plea was void is without merit.

The defendant erroneously asserts that sec. 971.22(3), Stats., precludes the trial court from changing the place of the trial more than once. Section 971.22 provides in pertinent part:

"**971.22 Change of place of trial**

"(1) The defendant may move for a change of the place of trial on the ground that an impartial trial cannot be had in the county. The motion shall

295

be made at arraignment, but it may be made thereafter for cause.

"...

"(3) If the court determines that there exists in the county where the action is pending such prejudice that a fair trial cannot be had, it shall order that the trial be held in any county where an impartial trial can be had. Only one change may be granted under this subsection. The judge who orders the change in the place of trial shall preside at the trial. Preliminary matters prior to trial may be conducted in either county at the discretion of the court. The judge shall determine where the defendant, if he or she is in custody, shall be held and where the record shall be kept. If the criteria under s. 971.225(1)(a) to (c) exist, the court may proceed under s. 971.225(2)."

Admittedly, the statute clearly states that, "Only one change may be granted under *this subsection.*" sec. 971.22(3), Stats. (Emphasis added.) Read as a whole, however, sec. 971.22 grants the *defendant* only one opportunity to request and receive a change in the place of trial. It places no limitation on the trial court's discretion to change the place of trial once the defendant has waived his right to trial in the county where the offense occurred.

In fact, sec. 971.225, Stats.,[11] the statute which al-

---

[11] Section 971.225, Stats., provides:

**"971.225 Jury from another county**

"(1) In lieu of changing the place of trial under s. 971.22(3), the court may require the selection of a jury under sub. (2) if:

"(a) The court is required or has decided to sequester the jurors after the commencement of the trial, as provided in s. 972.12;

lows for a selection of a jury from another county, and which procedure the trial court in this case ultimately decided to use (though the defendant's plea obviated its implementation), specifically requires that the trial court "follow the procedure under s. 971.22 [change of place of trial] until the jury is chosen in the 2nd county. At that time, *the proceedings shall return to the original county. . . .*" Section 971.225(2), Stats. (Emphasis added.) This statute requires that a trial court move its proceedings to another county, select a jury, and then return to the original county. This is precisely what happened in the instant case. If a court determines that grounds exist, pursuant to sec. 971.22(3), for changing the place of trial, nothing precludes it from amending its decision to change the place of trial to order in lieu thereof that the jury be selected from another county. The trial court need only make the additional determination that conditions (a) and (c) of sec. 971.225(1) are met. It does not matter if the court amends its order *sua sponte* or on the basis of a motion to reconsider the original order.

In the present case, we cannot conclude that the trial court abused its discretion in changing its pretrial

"(b) There are grounds for changing the place of trial under s. 971.22(1); and

"(c) The estimated costs to the county appear to be less using the procedure under this section than using the procedure for holding the trial in another county.

"(2) If the court decides to proceed under this section it shall follow the procedure under s. 971.22 until the jury is chosen in the 2nd county. At that time, the proceedings shall return to the original county using the jurors selected in the 2nd county. The original county shall reimburse the 2nd county for all applicable costs under s. 814.22."

order regarding change of venue to one of jury selection from Douglas county. The defendant could not have suffered any prejudice from the change in orders. The jury would have been selected from Douglas county and sequestered after commencement of the trial under either order. *See,* sec. 972.12, Stats. The defendant would not have or could not have conceived of any potential prejudice due to the trial court's change of its order, because none even arguably existed. In addition, the trial court noted in its memorandum opinion of May 14, 1985, that, "The record is clear that this was a negotiated plea with no mention at any time that the change of trial precipitated the defendant's change of mind to enter this plea." The defendant's contention that the trial court's order moving the trial back to its place of origin in Eau Claire county caused him to plead no contest lacks any credibility or foundation. Accordingly, we reject it.

*By the Court.*—The order of the circuit court is affirmed.

HEFFERNAN, CHIEF JUSTICE *(concurring)*. Though reasonable people can differ as to whether *Cecchini* procedure (*State v. Cecchini,* 124 Wis. 2d 200, 368 N.W.2d 830 (1985)) is constitutionally mandated, the standards for judicial administration set up by *Cecchini* were sensible and should be adhered to. *Cecchini* established that a complete record of a defendant's understanding of a plea be made at the plea hearing. This procedure discourages postconviction attacks. The majority would allow for a *post hoc* cure of a deficient plea hearing by admitting evidence at the postconviction hearing. At pages 251–252. Though I

support flexible plea hearing procedures[1] for establishing that pleas are intelligently and voluntarily made—such as allowing the judge to incorporate by reference evidence from earlier proceedings to establish "knowing and voluntary"—a postconviction cure procedure simply means there will be one or more *evidentiary* hearings on the plea withdrawal issue.

Furthermore, by shifting the burden of persuasion to the prosecutor in sec. 974.02, Stats., hearings, the majority puts an undue burden on already overworked prosecutors. The majority's justification—that this will provide the necessary incentive for prosecutors to see that the job is done right the first time at the plea hearing—though commendable, may be illusory. If we take our lesson from experience under *Cecchini,* where the consequence of a defective plea hearing was withdrawal of plea as a matter of right, it is far from clear that the prosecutor's supporting role of assisting the trial court to implement plea procedures will in fact reduce plea-hearing errors. Under *Cecchini,* court calendars remained crowded with postconviction motions to withdraw pleas.

Finally, the majority seeks compliance with plea-hearing procedures by an in terrorem coercion of trial judges: "Intentional failure to follow such mandate could be grounds for judicial discipline." At page 279. I feel that this threat is an idle one. Judges are most unlikely to intentionally neglect their duties. But in the absence of a structured hearing which encompasses all the statutory requirements for a guilty-plea hearing, errors are more likely to occur. *Cecchini* procedurally was working well. It would have been sufficient to

[1] *State v. Bartelt,* 112 Wis. 2d 467, 483 n. 3, 334 N.W.2d 91 (1983).

place *Cecchini's* foundation upon the statute. This would have avoided the problems of retroactivity that *Cecchini* has raised. I feel that we have imposed a new and additional cumbersome procedure that will serve to clog the course of justice and place new burdens on judges and prosecutors.

I concur.

I am authorized to state that JUSTICES ABRAHAMSON and BABLITCH join in this concurrence.