STATE of Wisconsin,
Plaintiff-Respondent,

v.

Wayne A. SUTTON,
Defendant-Appellant.†

Court of Appeals

*Nos. 2005AP1693–CR, 2005AP1694–CR. Submitted on briefs January 19, 2006.—Decided May 17, 2006.*

2006 WI App 118

(Also reported in 718 N.W.2d 146.)

† Petition to review denied 8-30-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Schmaal*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Snyder, P.J., Nettesheim and Anderson, JJ.

¶ 1. SNYDER, P.J. Wayne A. Sutton appeals from judgments of conviction and subsequent orders denying postconviction relief. He contends that his plea was not knowingly, intelligently, and voluntarily made because he was not advised of the potential punishment for his crimes. Sutton asserts that Wis. Stat. § 971.08(1)(a)

(2003–04),[1] which directs a court to advise a defendant of "the potential punishment if convicted" prior to accepting a plea of guilty or no contest, requires a court to advise the defendant of the maximum term of initial confinement associated with a bifurcated sentence under Wisconsin's truth-in-sentencing law (TIS). This is a case of first impression, requiring us to apply *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), under TIS.[2] Sutton also contends that there was no sufficient factual basis for the charge of first-degree recklessly endangering safety and thus the circuit court erred when it accepted his plea to that charge. We hold that there was a sufficient factual basis in the record to support the conviction, and we further hold that the circuit court properly informed Sutton of "the potential punishment" when it advised him of the maximum term of imprisonment. We therefore affirm the judgments and orders of the circuit court.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2. This appeal stems from consolidated cases against Sutton, the first charging him with felony battery and misdemeanor bail jumping, and the second

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

[2] We certified the following issue to the Wisconsin supreme court:

> Whether WIS. STAT. § 971.08(1)(a) (2003–04), which directs a court to advise a defendant of "the potential punishment if convicted" prior to accepting a plea of guilty or no contest, requires a court to advise the defendant of the maximum term of initial confinement associated with a bifurcated sentence under Wisconsin's truth-in-sentencing law.

The supreme court denied certification. We now address the issue.

charging him with his fifth offense of operating a motor vehicle with a prohibited alcohol concentration (PAC), felony bail jumping, and a second offense of operating a motor vehicle after revocation. By plea agreement, the State amended the felony battery charge to first-degree reckless endangerment and agreed to dismiss and read in the misdemeanor bail jumping charge in exchange for Sutton's plea of guilty or no contest. The State also agreed to dismiss and read in the felony bail jumping and operating after revocation charges in exchange for a plea of guilty or no contest to the fifth offense of PAC. Consequently, Sutton pled to a Class D felony, first-degree reckless endangerment under WIS. STAT. § 941.30(1) (2001–02), and a Class H felony, a fifth PAC offense under WIS. STAT. §§ 346.63(1)(b) and 346.65(2)(e).[3]

¶ 3. Both convictions are subject to bifurcated sentences under Wisconsin's TIS.[4] The Class D felony under TIS-I is punishable by a fine and an overall sentence of not more than ten years' imprisonment, of which the term of initial confinement may not exceed five years. WIS. STAT. §§ 939.50(3)(c) and 973.01(2)(b)4. (1999–2000). The Class H felony under TIS-II is punishable by a fine and an overall sentence of not less than six months nor more than six years' imprisonment, of

---

[3] Effective February 1, 2003, first-degree reckless endangerment was reclassified from a Class D felony to a Class F felony. *See* note to WIS. STAT. § 941.30(1) (2001–02).

[4] The reckless endangerment charge arose from an event that took place on April 10, 2002. TIS-I applies to offenses committed between December 31, 1999 and January 31, 2003. The PAC charge arose from an event on May 3, 2004. TIS-II applies to offenses committed on or after February 1, 2003. *See State v. Cole*, 2003 WI 59, ¶ 4, 262 Wis. 2d 167, 663 N.W.2d 700.

which the term of initial confinement may not exceed three years. Wis. Stat. §§ 346.65(2)(e), 939.50(3)(h), 973.01(2)(b)8.

¶ 4. During the plea colloquy regarding the reckless endangerment charge, the circuit court advised Sutton that the penalty for the Class D felony reckless endangerment included a "maximum penalty of $10,000 or ten years' imprisonment or both." Regarding the PAC charge, the court stated, "If you are convicted of that offense, sir, which would be your 5th offense for an OWI-related incident, that would be a Class H felony, and . . . you would be looking at a fine of between $600 and $10,000 and imprisonment for between six months and six years." The court also advised Sutton of the maximum term of imprisonment for the charges that were dismissed but read in under the plea agreement. The court later advised Sutton that it would not have to follow the sentencing recommendations of either party and could impose the "maximum that the law allows," including "ten years in prison" for first-degree reckless endangerment and "six years in prison" for the PAC offense.

¶ 5. With regard to the conviction for recklessly endangering safety, the circuit court imposed an eight-year sentence, with three years of initial confinement and five years of extended supervision. The court imposed a four-year sentence in connection with the PAC conviction, ordering fourteen months of initial confinement in prison and thirty-four months of extended supervision. The court ordered the sentences to be served consecutively.

¶ 6. Sutton moved for postconviction relief, arguing that his pleas were not knowingly, intelligently, and voluntarily entered with respect to the potential punishment. Sutton also contended that there was no

factual basis for the amended charge of first-degree reckless endangerment. The circuit court denied Sutton's motion, holding that the plea colloquy met the requirements of *Bangert*. Sutton appeals.

## DISCUSSION

¶ 7. Sutton presents two issues for our review. First, we must determine whether the circuit court complied with the mandate of Wis. Stat. § 971.08(1)(a), which requires that a defendant be informed of the potential punishment he or she faces if convicted. It is well established that a criminal defendant must enter a plea of guilty or no contest knowingly, intelligently, and voluntarily. *State v. Bollig*, 2000 WI 6, ¶ 15, 232 Wis. 2d 561, 605 N.W.2d 199. When a defendant is not aware of the potential punishment, the plea is not entered knowingly, intelligently, and voluntarily, and the result is a manifest injustice. *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 635–36, 579 N.W.2d 698 (1998).

¶ 8. Second, we must determine whether the circuit court complied with Wis. Stat. § 971.08(1)(b), which requires a court to "[m]ake such inquiry as satisfies it that the defendant in fact committed the crime charged." Unless it was clearly erroneous, we will uphold the circuit court's determination that there existed a sufficient factual basis to accept the plea. *State v. Harrington*, 181 Wis. 2d 985, 989, 512 N.W.2d 261 (Ct. App. 1994).

### *Potential Penalty Under TIS*

¶ 9. The circuit court's duty when accepting a plea of guilty or no contest is codified in Wis. Stat. § 971.08 and further developed in *Bangert*. Our specific focus is

on the statutory language requiring the circuit court to determine that the defendant understands "the potential punishment if convicted," and the *Bangert* standard requiring a court to "establish the accused's understanding of . . . the range of punishments" associated with the crime charged. *Bangert*, 131 Wis. 2d at 261–62.

¶ 10. Sutton asserts that when a defendant, who is subject to a bifurcated sentence under TIS, is advised of a maximum term of imprisonment without being advised of the maximum term of initial confinement, the result is coercive because the term "imprisonment" connotes confinement.[5] Sutton was told that his maximum penalty included "ten years' imprisonment" on the reckless endangerment charge and "imprisonment for between six months and six years" on the PAC charge. As he understood it, Sutton faced up to sixteen years in prison on these two charges. The statutes, however, dictate a maximum of five years' initial confinement and three years' initial confinement respectively. WIS. STAT. §§ 973.01(2)(b)4 (1999–2000) and 973.01(2)(b)8. Had he been advised of the maximum terms of initial confinement, Sutton implies, he may have weighed differently his decision to plead guilty or no contest.

---

[5] It is worth noting that the word "imprisonment" has been interpreted in "common-sense fashion to mean incarcerated or confined in jail or prison." *Cole*, 262 Wis. 2d 167, ¶ 26. When the legislature enacted TIS-I, it gave the term a unique statutory meaning; specifically, "imprisonment" was defined as a bifurcated sentence comprised of initial confinement and extended supervision. *Id.*, ¶ 27; WIS. STAT. § 973.01 (1999–2000). Prior to the enactment of TIS-I, circuit courts advising defendants of a maximum term of imprisonment used the common-sense meaning of confinement. *See Cole*, 262 Wis. 2d 167, ¶ 26. Even under TIS-I, the legislature occasionally used "imprisonment" to mean confinement alone. *Id.*, ¶ 37.

¶ 11. Making a defendant aware of the potential punishment generally means that a defendant must be aware of the direct consequences of his or her plea. *See State v. Byrge*, 2000 WI 101, ¶ 60, 237 Wis. 2d 197, 614 N.W.2d 477. A direct consequence of a plea has "a definite, immediate, and largely automatic effect on the range of a defendant's punishment." *Id.*, ¶¶ 60–61. However, the circuit court need not inform a defendant of collateral consequences of a plea. *Id.*, ¶ 61. "The distinction between direct and collateral consequences essentially recognizes that it would be unreasonable and impractical to require a circuit court to be cognizant of every conceivable consequence before the court accepts a plea." *Id.*, ¶ 61.

¶ 12. Sutton argues that the maximum term of initial confinement is a direct consequence of a plea and the circuit court had an obligation to include that information in the colloquy. Sutton turns to *Byrge* for support. There, the circuit court sentenced Byrge to life imprisonment for first-degree intentional homicide and set a parole eligibility date of July 2, 2095, noting that Byrge would be 120 years old at that time. *Id.*, ¶¶ 21, 56. The State maintained that the circuit court's power to set the parole eligibility date represents only a collateral consequence of the plea, and therefore Wis. Stat. § 971.08(1)(a) did not obligate the circuit court to notify Byrge that it would exercise its option to set parole eligibility. *See Byrge*, 237 Wis. 2d 197, ¶ 62. The *Byrge* court rejected the State's position, holding:

> [A] different set of considerations arises in the limited circumstances in which a sentencing court itself sets the parole eligibility date. If a circuit court elects to exercise the statutory option set forth in Wis. Stat. § 973.014(2), as it did in this case, the parole eligibility

> date links automatically to the period of incarceration, which in turn has a direct and automatic effect on the range of punishment. At Byrge's plea hearing, the circuit court expressly acknowledged this reality when it selected a parole eligibility date that exceeded Byrge's anticipated life span.

*Byrge*, 237 Wis. 2d 197, ¶ 67. Sutton posits that the circumstances in *Byrge* are analogous to terms of initial confinement under TIS for purposes of accepting a plea because they represent "boundaries or conditions on the trial court's broad discretionary power to fix a term of imprisonment under the overall statutory ceiling." The State argues that Sutton reads *Byrge* too broadly because *Byrge*, by its own terms, has a very specific and limited application. Indeed, the supreme court held "that in the narrow circumstance in which a circuit court has statutory authority under WIS. STAT. § 973.014(2) to fix the parole eligibility date, the circuit court is obligated to provide the defendant with parole eligibility information before accepting a plea." *Byrge*, 237 Wis. 2d 197, ¶ 68.

¶ 13. The State contends that the initial term of confinement is not a direct result of a plea, but rather a collateral consequence that is contingent on future events. It points out that periods of confinement are often reduced or extended depending on various circumstances and "are not nearly as fixed" as parole eligibility dates. For example, initial terms of confinement may be modified by a successful motion for modification under WIS. STAT. § 973.195(1r); participation in the challenge incarceration program under WIS. STAT. § 302.045(3m); conditions of age or terminal illness under WIS. STAT. § 302.113(9g); or misconduct in prison under § 302.113(3)(a). The State directs us to *State v. Yates*, 2000 WI App 224, ¶¶ 10–11, 239 Wis. 2d 17,

619 N.W.2d 132, for the proposition that since confinement periods may be controlled by a defendant's own behavior or a Department of Corrections decision, the consequence is collateral.

¶ 14. Perhaps most persuasively, the State points out that Sutton's *range of punishment,* that is the maximum term of imprisonment, does not change regardless of whether his conduct results in more confinement. The maximum term of imprisonment is the immediate and inflexible consequence of the plea and therefore, the State argues, the only direct consequence. *See, e.g., State v. Plank,* 2005 WI App 109, ¶ 16, 282 Wis. 2d 522, 699 N.W.2d 235, *review denied,* 2005 WI 136, 285 Wis. 2d 630, 703 N.W.2d 379 ("The lack of parole under truth-in-sentencing does not mean [a defendant] will serve more time than the maximum penalty of which the court informed him [or her]. Thus, truth-in-sentencing does not affect his [or her] range of punishment.").

¶ 15. *Bangert* requires the circuit court to advise the accused of the "range of punishments" associated with the crime. *See Bangert,* 131 Wis. 2d at 261–62. The court here personally informed Sutton of the maximum term of imprisonment under TIS, even though the maximum term of confinement was not made explicit by the court. We hold that the circuit court has met the standard articulated by our supreme court in *Bangert* and no additional dissection of the potential punishment is required.

*Adequate Factual Basis to Support Conviction*

¶ 16. Sutton next argues that the circuit court erred in accepting his plea on the charge of first-degree

recklessly endangering safety because there was not a sufficient factual basis for that charge. When we review a circuit court's determination that a sufficient factual basis exists to support a plea, we look at the totality of the circumstances surrounding the plea to determine whether the court's findings were clearly erroneous. *See State v. Thomas*, 2000 WI 13, ¶ 18, 232 Wis. 2d 714, 605 N.W.2d 836. We approach this issue recognizing that where, as here, the plea is pursuant to a negotiated agreement between the State and the defendant, "the court need not go to the same length to determine whether the facts would sustain the charge as it would where there is no negotiated plea." *See Broadie v. State*, 68 Wis. 2d 420, 423–24, 228 N.W.2d 687 (1975).

¶ 17. Generally, the factual basis for a guilty plea may be established by reference to the allegations set forth in the criminal complaint. *See, e.g., State v. Harrington*, 181 Wis. 2d at 988 (complaint provided factual basis for burglary plea). Here, that approach is somewhat hindered because the charged offense was battery, but Sutton pled to reckless endangerment. Other facts may be gleaned from the plea hearing record, the sentencing hearing record, as well as defense counsel's statements concerning the factual basis presented by the State. *See Thomas*, 232 Wis. 2d 714, ¶ 18.

¶ 18. Here, the State expressed concerns that it would not be able to meet its burden of proof on the element of intent required for the battery charge in the complaint. *See* Wis. Stat. § 940.19(4) (2001–02). The plea bargain resulted in a charge of first-degree reckless endangerment, which required a factual basis for the following elements: (1) the defendant endangered the safety of another human being, (2) by criminally reck-

less conduct, and (3) showed utter disregard for human life. *See* WIS JI—CRIMINAL 1345. The element of intent is no longer a factor.

¶ 19. The record demonstrates that the circuit court wrestled with the elements of the negotiated charge. At the plea hearing, the court opined, "[I]t could be that Mr. Sutton knew of the condition [the victim] was left in at the bathroom of the [bar], and, as such, knowing that condition and leaving him there could constitute criminally reckless conduct." Upon Sutton's motion for reconsideration, the court stated:

> Did I have concerns? Yes. Did I recognize that there may have been some problems with the factual aspect of this case as it related to the elements of the crime of first degree reckless endangerment? Yes. But on the other hand, I told Mr. Sutton that I had those concerns and that he had the right to take this case to trial if that was his position.
>
> . . . .
>
> When the trial court is told, as a result of a three-way conference between the defendant, his attorney and the State, that this is the result that they want and this is the factual basis that they are stipulating to, that a court, even if it has concerns over that legal basis, ought to have a right to say, all right. I will rely on that factual basis as represented to me . . . .

Ultimately, the circuit court confirmed its holding that an adequate factual basis existed for the plea. Our review of the record supports this decision.

¶ 20. Separate and apart from the question of intent, the complaint alleged that the victim walked into the restroom and about two minutes later Sutton walked out of the restroom and appeared angry. The complaint relates that the victim was discovered shortly after Sutton left the men's room, and the victim was

lying on the men's room floor, unconscious and with blood around his mouth.[6]

¶ 21. At the plea hearing, the State presented the basis for the amended charge of first-degree reckless endangerment, relying in part on statements Sutton made to a West Bend police officer. In his statement, Sutton said that the victim lunged or tried to strike him while the two of them were in a small restroom at a bar. Sutton responded by pushing the victim. Defense counsel acknowledged that the victim may have hit the wall, toilet, urinal or sink after Sutton pushed him. Sutton then left the restroom without checking on the victim. The State responded to the court's concerns regarding the element of "utter disregard for human life" by stating that the nature of the victim's injuries were such that anyone in Sutton's position "should have known how serious the injuries were and should have done something to render aid to the victim." Defense counsel responded that the prosecutor's statements were correct and made it clear that though Sutton could not plead to any charge that included an element of intent, he felt that first-degree reckless endangerment presented an opportunity for a "plausible plea to a plausible circumstance of events."

¶ 22. Sutton argues on appeal that his defensive action in pushing the victim cannot form the basis for

---

[6] The complaint also alleges that Sutton admitted assaulting a man in a tavern restroom and kicking the man in the head. The complaint states that Sutton asked an acquaintance to provide him with an alibi. At the plea hearing the circuit court expressly rejected these contentions and stated it would make a determination based upon Sutton's description of pushing the victim after the victim initiated the confrontation as the basis for the plea.

criminally reckless conduct. That argument would have been available to him at trial. However, Sutton exhorted the court to accept the version of facts that were presented in support of the reckless endangerment charge. "[A] factual basis for a plea exists if an inculpatory inference can be drawn from the complaint or facts admitted to by the defendant even though it may conflict with an exculpatory inference elsewhere in the record and the defendant later maintains that the exculpatory inference is the correct one." *State v. Black*, 2001 WI 31, ¶ 16, 242 Wis. 2d 126, 624 N.W.2d 363. "The essence of what a defendant waives when he or she enters a guilty or no contest plea" is the opportunity to defend against the inculpatory inferences and advocate those that are exculpatory. *See id.*

¶ 23. Here, the circuit court properly scrutinized the information presented by both parties and questioned the attorneys extensively before determining that a sufficient factual basis existed for the plea. A circuit court fulfills its duty when it makes "such inquiry as satisfies [the court] that the defendant in fact committed the crime charged." WIS. STAT. § 971.08(1)(b). Based upon the foregoing, we hold that the circuit court applied the proper legal standard and its decision is supported by the totality of the circumstances.

## CONCLUSION

¶ 24. We conclude that the circuit court properly advised Sutton of the "range of punishments" associated with his crimes when it informed him of the maximum term of imprisonment that could be imposed. *See Bangert*, 131 Wis. 2d at 261–62. Nothing in

Wis. Stat. § 971.08(1)(a) or *Bangert* convinces us that a sentencing court must make the maximum term of confinement associated with a bifurcated sentence explicit prior to accepting a plea of guilty or no contest. We further conclude that the court did not erroneously exercise its discretion in determining that a sufficient factual basis existed for accepting Sutton's plea of no contest to the charge of first-degree reckless endangerment. Accordingly we affirm the judgments of the circuit court together with the postconviction orders.

*By the Court.*—Judgments and orders affirmed.