STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald W. LICHTY, Defendant-Appellant.†

Court of Appeals

*No. 2011AP2873–CR. Submitted on briefs September 14, 2012.
—Decided October 24, 2012.*

2012 WI App 126

(Also reported in 823 N.W.2d 830.)

† Petition for review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John J. Grau* of *Grau Law Office* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sandra L. Tarver*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Gundrum, J.

¶ 1. BROWN, C.J. This is a case where the defendant agreed to plead to an offense, with everyone thinking the maximum amount of extended supervision allowable was one thing, but was sentenced based on a lesser maximum when the court learned of the error. We hold that when a good-faith legal error is made at the plea hearing regarding the maximum periods of initial confinement and extended supervision permitted by Wisconsin law, and when that error was corrected at the sentencing hearing, to the defendant's benefit, there is no manifest injustice.

*Background*

¶ 2. Ronald Lichty was arrested in 2010 after police identified him and his wife as the perpetrators of some residential burglaries in Mequon and Grafton. While Lichty was waiting alone in an interview room at the Ozaukee county jail, an officer observed him taking heroin; Lichty subsequently was charged with two counts of burglary and one count of drug possession. In October, Lichty's counsel negotiated a plea agreement under which Lichty would plead no contest to the two burglary charges, violations of WIS. STAT. § 943.10

737

(2009–10).[1] In exchange, the State would drop the drug possession charge and recommend a sentence of twelve years on each burglary charge, to run concurrently, bifurcated into six years of initial confinement and six years of extended supervision.

¶ 3. When he completed the plea questionnaire/ waiver of rights form memorializing his plea agreement, in October, Lichty wrote that he understood that the maximum penalty he faced was "12½ years; 25K fine" and acknowledged that burglary was a Class F felony. A chart on the back of this form noted that the twelve and one-half year maximum term for Class F felonies was bifurcated as "7.5 yrs initial confinement/5 yrs extended supervision." The court accepted Lichty's pleas at a November hearing, noting the dismissal of the possession charge, and the State's recommendation of "a total of 12 years in prison, concurrent to each other, 6 years initial confinement, 6 years extended supervision." During his plea colloquy with the court, Lichty testified that he understood the charges and "the possible penalties and elements" and understood that the court was not bound to follow the State's sentencing recommendation. At no time during this hearing, apparently, did anyone notice the conflict between the recommendation of "6 years initial confinement, 6 years extended supervision" and the statutory bifurcation of a maximum seven and one-half years of initial confinement and five years of extended supervision under Wis. Stat. § 973.01(2)(b)6m. and (d)4.

¶ 4. The sentencing hearing took place in January 2011. The State opened its presentation by noting the mistake regarding the maximum period of extended supervision applicable to a Class F felony:

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

> The State's recommendation included six years ex-
> tended supervision. On reflection, looking at it, I don't
> think that's available. I think five years of extended
> supervision is the maximum. So to that extent, I'm
> going to moderate my recommendation.

Later, the State again clarified its changed recommen-
dation of six years of confinement followed by five, not
six, years of extended supervision:

> The negotiation I extended was six years incarceration.
> I submit the maximum extended supervision the Court
> may use is five years extended supervision.

During his presentation, Lichty's attorney likewise
noted that "the most time that Mr. Lichty can be placed
on extended supervision is five years on each count."
The defendant also spoke on his own behalf regarding
sentencing.

¶ 5. At the conclusion of the sentencing hearing,
the court sentenced Lichty to eleven years on each
count, bifurcated as six years of incarceration and five
years of extended supervision, though contrary to the
State's recommendation, the court made the sentences
consecutive.

¶ 6. In November 2011, Lichty filed a postconvic-
tion motion to withdraw his pleas, arguing that under
*State v. Woods*, 173 Wis. 2d 129, 496 N.W.2d 144 (Ct.
App. 1992), the initial mistake as to the legally available
maximum period of extended supervision meant that
his plea was "based on an illegal sentence recommen-
dation" that "was modified without his consent," mak-
ing withdrawal necessary to prevent manifest injustice.
Lichty further argued that his trial counsel was ineffec-
tive for failing to object to "the State's unilateral rene-
gotiation of the plea agreement without the Defendant's
knowledge or consent" and that the error automatically

prejudiced Lichty, analogous to *State v. Sprang*, 2004 WI App 121, 274 Wis. 2d 784, 683 N.W.2d 522.

¶ 7. The court denied Lichty's motion, stating that under the standard in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), "it is abundantly clear that at the plea hearing Lichty freely, voluntarily and intelligently entered his pleas with the understanding that he could be placed on extended supervision for up to 6 years" and that due process was therefore not violated. Further, the court held, the "misstatement of the maximum available period of extended supervision" did not compromise "the fundamental integrity of the defendant's pleas," and Lichty thus could show no "manifest injustice" under *Woods*. Finally, Lichty's ineffective assistance claim also was rejected because, even assuming that his attorney's representation was incompetent under *Strickland v. Washington*, 466 U.S. 668 (1984), Lichty could not establish that the error prejudiced him.

*Discussion*

■■

¶ 8. A defendant seeking to withdraw a guilty plea after sentencing must show that refusal would cause "manifest injustice." *State v. Brown*, 2006 WI 100, ¶ 18, 293 Wis. 2d 594, 716 N.W.2d 906. A defendant can make a prima facie showing of manifest injustice if the trial court failed to follow the procedures designed to ensure a defendant's plea is knowing, intelligent, and voluntary (i.e., the procedures outlined in Wis. Stat. § 971.08 and case law), and the defendant swears that he actually did not know or understand the plea's consequences. Such a showing shifts the burden to the State to establish that despite the defects in those procedures,

the defendant's plea was knowing, intelligent, and voluntary. *See Brown*, 293 Wis. 2d 594, ¶¶ 36–37 (discussing *Bangert* motions).

¶ 9. If, on the other hand, no defects in the plea-taking procedures are evident in the record itself, the defendant's motion to withdraw the plea must allege other facts, such as ineffective assistance of counsel, that, if proven, would demonstrate that the defendant did not understand his plea or its consequences. *Brown*, 293 Wis. 2d 594, ¶ 42 (discussing *Bentley* motions; *see State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996)).

¶ 10. Whether a defendant's plea was knowing, intelligent, and voluntary is a question of constitutional fact. *Brown*, 293 Wis. 2d 594, ¶ 19. In reviewing a question of constitutional fact, we accept the circuit court's findings of evidentiary fact unless they are clearly erroneous. *Id.* Whether the record facts demonstrate that the plea-taking procedures were deficient is a question of law reviewed de novo; so is the question of whether the defendant has alleged sufficient facts to show that he did not actually understand his plea and its consequences. *Id.*, ¶ 21.

¶ 11. Under the *Bangert* standard, the procedures followed by the State, Lichty's attorney, and the circuit court were impeccable. The circuit court quizzed Lichty thoroughly about all of his statements on the plea agreement form, including the precise facts the State would have to show to prove the burglary charges, his education and his understanding of English, his mental health, his constitutional rights, the consequences of being a convicted felon, his understanding that the penalty was limited to the range established by law, and

his understanding that the State's sentence recommendation was not binding on the court.

¶ 12. The only mistake in the proceedings was not a flaw or omission in the plea-taking procedures, but rather a good-faith legal error regarding the maximum amounts of confinement and extended supervision permitted by the statute governing bifurcated sentences for Class F felonies, WIS. STAT. § 973.01. That mistake was relatively minor. At the hearing where the defendant's plea was taken, the defense, the State, and the circuit court mistakenly believed that the State could recommend a sentence of six years' confinement followed by six years' extended supervision. In fact, Wisconsin law expressly states that the maximum term of initial confinement for a Class F felony is seven and one-half years, § 973.01(2)(b)6m., and the maximum term of extended supervision is five years, § 973.01(d)4.

¶ 13. By the time of the sentencing hearing in January, the mistake had been discovered, and the State therefore adjusted its recommendation to comply with the law by reducing the recommended extended supervision period to the statutory maximum of five years. Notably, the State left the confinement portion of the recommended sentence at the agreed-upon six years, so that the total recommended sentence was reduced from the twelve-year sentence Lichty had bargained for to an eleven-year sentence.

¶ 14. As the circuit court pointed out, and as Lichty concedes, this mistake was no violation of WIS. STAT. § 971.08 or *Bangert*. It is true that the circuit court must ensure the defendant understands the "potential punishment" for the crime to which he pleads guilty. Sec. 971.08(1)(a). But the potential punishment

742

means the range of punishments that are an "immediate and inflexible consequence" of the plea, i.e., not merely the "initial term of confinement," which is often reduced or extended due to numerous factors (including a defendant's own conduct while in prison) but the total maximum period of confinement that may eventually result as a direct consequence of the plea. *State v. Sutton*, 2006 WI App 118, ¶¶ 13–15, 294 Wis. 2d 330, 718 N.W.2d 146. In Lichty's case, as he acknowledged on his plea questionnaire/waiver of rights, that maximum potential penalty was clearly communicated and understood: twelve and one-half years and a $25,000 fine on each count.

¶ 15. Moreover, even with regard to that maximum statutory penalty for the crime,

> where the sentence communicated to the defendant is higher, but not substantially higher, than that authorized by law, the incorrectly communicated sentence does not constitute a *Bangert* violation and will not, as a matter of law, be sufficient to show that the defendant was deprived of his constitutional right to due process of law.

*State v. Cross*, 2010 WI 70, ¶ 40, 326 Wis. 2d 492, 786 N.W.2d 64. Thus, in *Cross*, there was no *Bangert* violation when the defendant was informed at the time he made his plea that the maximum penalty was twenty-five years of initial confinement plus fifteen years of extended supervision, but in reality, the maximum penalty was only twenty years of initial confinement plus ten years of extended supervision. *Cross*, 326 Wis. 2d 492, ¶ 41. Where the sentence he received under his plea agreement was "even *more* favorable to him than he thought when he entered into it," the defendant in *Cross* could not satisfy his burden of

showing manifest injustice merely by pointing to an error that worked to his own benefit. *Id.*, ¶ 43.

¶ 16. The same reasoning applies in Lichty's case. It makes no difference that in *Cross*, the State's recommendation itself was legally permissible whereas in Lichty's case the good-faith error was part of the State's recommendation. The bottom line is that, as in *Cross*, in Lichty's case the plea deal was an even better bargain than he had been promised. Lichty faced a maximum sentence of twelve and one-half years on each count of burglary, which could have been bifurcated as seven and one-half years of confinement and five years of extended supervision on each count; not to mention, he was also facing a drug possession charge. In exchange for his guilty pleas, the drug charge was dismissed, and Lichty received the State's promise to recommend only six years' confinement and six years' extended supervision on each charge, to run concurrently.

¶ 17. In other words, the recommended sentence was for six years of initial confinement and five years of extended supervision, whereas the maximum recommendation could have been for fifteen years of initial confinement and ten years of extended supervision. Under *Bangert* and *Cross*, this is not a record from which we may automatically infer manifest injustice.

¶ 18. Lichty's attempt to withdraw his pleas likewise fails under the *Bentley* standard. He has alleged no specific facts that, if proven, would show that he did not understand the direct consequences of his plea agreement at the time he made it. To reiterate, the only fact Lichty points to is that at the time his guilty pleas were accepted, he mistakenly thought that for each count he potentially faced one more year of extended supervision (and one and one-half years less of initial confinement) than the law actually permitted.

¶ 19. In contrast, in *Riekkoff*, a legal error justified withdrawal of the defendant's plea because the error undermined an important part of the "inducement" that motivated the defendant to plead guilty. *State v. Riekkoff*, 112 Wis. 2d 119, 129, 332 N.W.2d 744 (1983). Specifically, the State had promised the defendant that appellate review would be preserved despite the guilty plea, but that agreement was legally ineffective because a plea agreement cannot circumvent the rule that a guilty plea waives the right to appeal. *Id.* Moreover, the State did not honor the agreement, instead arguing against appellate review of the case. *Id.* In these circumstances, the misinformation about the preservation of the right to appeal meant that the plea was "neither knowing nor voluntary," and the State's arguments against appellate review violated the defendant's due process. *Id.*

¶ 20. In a similar vein, in *Woods*, legal error justified withdrawal of a guilty plea because the error went to the fundamental bargain made in the plea agreement, resulting in an illegal sentence that could not be carried out. *See Woods*, 173 Wis. 2d at 139–40. Consistent with the plea agreement, in *Woods* the circuit court ordered that the defendant's adult court sentence would run consecutive to the juvenile court disposition he was already completing. *Id.* at 134. However, because there is no law permitting an adult court sentence to run consecutive to a juvenile court disposition, the sentence itself was void. *Id.* at 140.

¶ 21. No such defective sentence was issued here, as the error regarding the permissible period of extended supervision was corrected by the State and confirmed by the defendant's attorney, on the record, during the sentencing hearing. *Woods* is also distinguishable because the record demonstrated that defendant's attorney, with-

out consultation, had strategically renegotiated with the State for an *increased* sentence recommendation. *Id.* at 134–35. Thus, at the sentencing hearing, the defendant in *Woods* did not receive the two-year sentence recommendation that he had bargained for, but instead, a two-to three-year sentence recommendation. *Id.* at 135. While the defendant's attorney may have had valid strategic reasons for asking the State to recommend a longer sentence than was initially negotiated, the defendant had the right to decide whether to affirmatively ask for an increased sentence recommendation. *Id.* at 141–42.

¶ 22. In Lichty's case, to repeat, in stark contrast to *Woods*, the State's recommendation was for a sentence one year shorter than the one he bargained for. Thus, despite the good-faith error during the plea negotiations, the fundamental nature of his bargain—recommendation of a bifurcated sentence totaling no more than twelve years—was preserved. In fact, the bargain was improved, in Lichty's favor. In these circumstances, the reasoning of *Riekkoff* and *Woods*, where legal error deprived a defendant of the benefit of his bargain, does not apply.

¶ 23. For similar reasons, Lichty's counsel's failure to object to the State's recommendation of five years, rather than six years, of extended supervision, cannot support a claim of ineffective assistance of counsel. Alleged breaches of a plea agreement are waived unless the defendant objects to them when they occur. *State v. Liukonen*, 2004 WI App 157, ¶ 6, 276 Wis. 2d 64, 686 N.W.2d 689. Defense counsel's failure to object to a material, substantial breach of the plea agreement may establish ineffective assistance of counsel. *Id.* For instance, in *Liukonen*, the State committed

a material, substantial breach of the plea agreement when, having agreed to recommend no more than seventeen years of incarceration, the prosecutor, during the sentencing hearing, "ma[de] comments that implied that Liukonen should receive a harsher sentence than the one the prosecutor had agreed to recommend." *Id.*, ¶ 17; *see also Sprang*, 274 Wis. 2d 784, ¶ 24 (material, substantial breach where State "insinuat[ed] that [the State] was distancing itself from its recommendation" (quoting *State v. Naydihor*, 2004 WI 43, ¶ 28, 270 Wis. 2d 585, 678 N.W.2d 220)).

¶ 24. But here no such material breach occurred. Not every small or technical breach of a plea agreement is "material" and "substantial"; only a breach "that violates the terms of the agreement and deprives the defendant of a material and substantial benefit for which he or she bargained" matters. *State v. Bowers*, 2005 WI App 72, ¶ 9, 280 Wis. 2d 534, 696 N.W.2d 255. In *Bowers*, for instance, no material or substantial breach occurred when a prosecutor inadvertently misstated the terms of the bifurcated sentence recommendation as two and one-half years of initial confinement and two and one-half years of extended supervision, rather than the promised recommendation of two years' confinement and three years' extended supervision. *Id.*, ¶ 10. Analogously, here, the State's recommendation of one year less of extended supervision than what Lichty bargained for did not deprive Lichty of the benefit of his plea agreement.

¶ 25. We reject Lichty's assertion that viewing the State's corrected recommendation as a shorter sentence "ignores the interrelationship between the two components of a bifurcated sentence." While it is no doubt true that "defendants are concerned with the amount of initial confinement they are facing at sentencing," this

generalization is no basis for inferring manifest injustice in Lichty's case, where the legal mistake made during negotiation of the plea agreement was so minor, particularly when viewed in the context of all of the favorable consequences of Lichty's plea. *See Cross*, 326 Wis. 2d 492, ¶ 59 (Abrahamson, C.J., concurring) ("I cannot conclude that the misinformation about the potential punishment, arising from a good faith mistake of all involved, defeated the knowing, voluntary, and intelligent nature of Cross's guilty plea."). Lichty cannot and does not point to any specific facts to show why it would have made any difference to him at the time of his plea agreement if he had known that the twelve and one-half year sentence he faced might be bifurcated into seven and one-half years of confinement and five years of extended supervision, rather than six years of each, much less can he show that the error and its correction prejudiced him or deprived him of the benefit he bargained for. To the contrary, the State ultimately recommended a sentence even more favorable than what it had promised to recommend.

*By the Court.*—Judgment and order affirmed.