SHIRLEY S. ABRAHAMSON, C.J.
¶ 88. (,dissenting). The case before us presents a clear example of a flawed plea colloquy under Bangert,[1] Brown,[2] and Wis. *77 Stat. § 971.08(l)(a).[3] According to the case law and the statute, in taking a guilty plea or no-contest plea the circuit court must establish the accused's understanding of the range of punishments which the crime carries.
¶ 89. The concurrence has it right: The defendant has met his two burdens under Bangert, which entitles him to an evidentiary hearing: (1) The defendant has made a prima facie showing of a violation of Wis. Stat. § 971.08(l)(a); and (2) The defendant has alleged that he did not know or understand the information (the range of punishments) that should have been provided at the plea hearing.[4]
*78 ¶ 90. Thus, the question posed for this court, as the concurrence correctly and simply explains, is "[w]hy, then, did he not get an evidentiary hearing?"[5]
¶ 91. This is an easy case: According to the record of the initial appearance,[6] the bail hearing,[7] the waiver of a preliminary hearing,[8] the arraignment,[9] the plea hearing,[10] and the sentencing hearing,[11] the defendant either was not told of the punishment or was not told in straight, simple English that the punishment for the crime was eight years' imprisonment.[12] Because the defendant was never told the correct punishment, no one can reach the conclusion on the basis of the record that the defendant knew or understood the penalty. I therefore conclude that the defendant is entitled to an evidentiary hearing.
¶ 92. The majority and concurring opinions offer different explanations for not affording the defendant *79 an evidentiary hearing, but both rely on the record to conclude that the defendant must have known (should have known, would have known, or is presumed to have known) the penalty for the crime.
¶ 93. At their core, the majority and concurring opinions are changing the law. The present law requires that a court determine whether the individual defendant (to use the Bangert terminology) "in fact" knows or understands the information that should have been provided at the plea hearing — a subjective test.[13]
¶ 94. The refusal of the majority and concurring opinions to afford the defendant an evidentiary hearing can be read as declaring that a court may determine from the paper record that a reasonable person must have known (should have known, would have known, or is presumed to have known) the information the court was required to provide at the plea hearing — an objective test. The majority and concurring opinions seem to be substituting an objective test for the subjective test set forth in Bangert, Brown, and Wis. Stat. § 971.08(l)(a). Neither the majority opinion nor the concurring opinion considers the constitutional implications of their respective approaches.
¶ 95. Because the majority and concurring opinions drastically break with precedent, I dissent.
¶ 96. Although the majority and concurring opinions offer various and different rationales for their ultimate decision in the present case,[14] they essentially *80 reason that no evidentiary hearing is needed because "the record makes clear that the defendant knew the *81 maximum penalty .... The record in this case is replete with evidence that [the defendant] was aware of the potential eight-year term of imprisonment, comprised of a six-year term of imprisonment for the underlying charge and an additional two-year term of imprisonment from the alleged repeater [charge]." Majority op., ¶¶ 8, 35 (emphasis added).
¶ 97. In contrast, I conclude that the record clearly and unambiguously demonstrates that the defendant was never told that he was subject to an eight-year term of imprisonment. Indeed the record is replete with inconsistencies and confusion by the circuit court and the defense counsel (with the prosecuting attorney remaining silent) regarding the maximum penalty the defendant faced.[15]
¶ 98. Because the defendant was never apprised of the maximum penalty, this court cannot determine that the defendant knew or understood the maximum penalty — information that should have been provided *82 at the plea hearing. This court should order an evidentiary hearing in the present case to determine whether the defendant did know and understand the maximum penalty he faced.[16]
¶ 99. Before I turn to the record, I must state the actual maximum penalty. Knowing the actual maximum penalty helps put in perspective the inaccurate information the defendant received.
¶ 100. According to the defendant's brief and my calculations, the maximum penalty was imprisonment not to exceed eight years, which could consist of not more than five years of initial confinement (prison) and not more than three years of extended supervision.[17]
*83 ¶ 101. A circuit court's telling the defendant at the plea hearing the maximum term of imprisonment, without explicitly stating the component parts of the bifurcated sentence, satisfies Bangert, Brown, and Wis. Stat. § 97l.08(l)(a).[18]
¶ 102. The majority opinion gratuitously and cavalierly warns that a circuit court's advising a defendant of the possible term of confinement and extended supervision at the plea hearing "could be misleading." Majority op., ¶ 42 n.12.[19]
¶ 103. The majority opinion thus opens the door for additional post-conviction motions. I have read many transcripts of plea colloquies; circuit courts often state the component parts of the imprisonment during the plea colloquy, although they are not required to do so. The majority opinion should not be read to mean that the circuit court commits a "Bangert" error if it provides a defendant with information about the components of the bifurcated sentence, as long as the circuit court gives the defendant the correct information about the maximum term of imprisonment.
¶ 104. And now to the record.
*84 ¶ 105. The complaint and information— documents available to the circuit court, defense counsel, prosecuting attorney and the defendant — stated that the defendant could be "imprisoned not more than six (6) years" with an additional penalty enhancer of "not more than 2 years."
¶ 106. These are correct statements of the statutory language, although it takes some calculation and legal knowledge to translate the legalese found in the complaint and information into knowing and understanding that the maximum penalty is "imprisoned not more than eight (8) years." Thus it is not clear from the complaint and information that the defendant was apprised of the maximum penalty of eight years of imprisonment, as the majority repeatedly and inaccurately states.
¶ 107. Moreover, it would take a proverbial Philadelphia lawyer to figure out what "imprisoned" means in the complaint and information in the present case. The word "imprisoned" takes on special significance in the present case because of the enhanced penalty, and the record shows that the defendant was told about "prison," not about being "imprisoned."
¶ 108. Although the defendant stated he was familiar with the complaint and information, neither document stated the maximum penalty as eight years' imprisonment. Nevertheless, the majority opinion can be read to state that when the complaint and information in the record state the penalty in the exact terms of the statute, as they do in the present case — a circumstance that will likely occur frequently — the defendant has been adequately told of the maximum penalty and is held to know and understand the maximum penalty. Such a holding completely undercuts Bangert.
*85 ¶ 109. I therefore examine the rest of the record to determine whether the defendant was apprised of the maximum penalty and understood the maximum penalty of eight years' imprisonment. I look at the plea colloquy and the plea questionnaire. Then I look at the sentencing hearing.
¶ 110. Neither the circuit court nor the defense attorney correctly translated the statutory penalty provisions in the complaint and information into plain English to advise the defendant of the correct maximum penalty in the plea colloquy or plea questionnaire, imprisonment for a maximum of eight years.
¶ 111. During the plea colloquy, the circuit court changed the description of the penalty, telling the defendant that he faced the possibility of "six years in prison." Majority op., ¶ 2.[20] The circuit court erred. The defendant was not subject to six years in prison. (Remember, six years in prison is not the same penalty as six years of imprisonment; his maximum prison (confinement) time, as I have stated previously and which never appears correctly in the record, is five years).
¶ 112. The plea questionnaire (obviously completed by the defense counsel and signed by the defendant) also errs in telling the defendant of the maximum penalty. The plea questionnaire states that the defendant could face a maximum penalty of "8 yrs prison." The defendant was not subject to an eight-year prison term. (Remember, eight years in prison (confinement) is not the same penalty as eight years of imprisonment; the defendant's maximum time in prison, which never *86 appears correctly in the record, is five years). Once again, the defendant was told of a different and incorrect penalty.
¶ 113. Nevertheless, the concurrence inexplicably, inaccurately, and incorrectly states that the complaint, information, and plea questionnaire correctly stated the defendant's maximum penalty and that the defendant's knowledge was "already evident throughout the record." Concurrence, ¶¶ 78, 86.
¶ 114. Neither the defense counsel nor the prosecuting attorney offered assistance to the circuit court during the plea colloquy to state the maximum penalty correctly. Our prior cases impose a burden on the prosecutor to ensure that the plea colloquy is sufficient. "As we explained in Bangert, part of the reason the burden shifts from the defendant to the state is that this burden-shifting 'will encourage the prosecution to assist the trial court in meeting its § 971.08 and other expressed obligations.' "[21]
¶ 115. At the sentencing hearing, the circuit court again incorrectly stated the maximum punishment under the statute. The circuit court advised the defendant that the felony (with the penalty enhancer) was "punishable by a $10,000 fine or six years in prison or both, but then there is the two additional years of possible prison because of the repeater." So once again the defendant was advised he faced eight years in prison (confinement), not eight years' imprisonment.
¶ 116. To summarize the record: The defendant was never explicitly told in plain English that the maximum penalty was eight years' imprisonment. The complaint and information were worded in terms of *87 imprisonment — not more than six years for the offense, which may be increased by not more than two years for the repeater charge. But these documents did not translate the legalese into plain English or calculate the effect of the penalty enhancer on the potential term of imprisonment. The plea colloquy set forth the maximum penalty in terms of prison — six years. The plea questionnaire set forth the maximum penalty in terms of prison — eight years. The defect in the plea hearing was not remedied at sentencing. Even at sentencing, the defendant was told incorrectly of a maximum prison term but was never told that the maximum penalty was eight years' imprisonment.
¶ 117. According to the record, the defendant was repeatedly given inconsistent and conflicting information about the maximum punishment he faced. When he was not told the maximum punishment, how can anyone conclude that the defendant knew and understood the maximum punishment? Nevertheless, the majority opinion concludes that on the basis of the complaint and information, the plea colloquy, and the plea questionnaire that the defendant was nonetheless aware of the "maximum eight-year term of imprisonment."[22] Majority op., ¶¶ 8, 35, 39. The majority seems *88 to reach its conclusion by substituting the word "imprisonment" for the word "prison" in the plea questionnaire.[23] The only point in the record that the number eight appears is in the plea questionnaire, which incorrectly refers to eight years in prison. The number five, the correct prison term, never appears in the record.
¶ 118. As I explained previously, according to the defendant's brief and my calculations, the defendant was subject to a maximum penalty of imprisonment not to exceed eight years, which could consist of not more than five years of initial confinement (prison) and not more than three years of extended supervision. As I have shown, the defendant was never so advised, and nothing in the record demonstrates that the circuit court, prosecuting attorney, defense counsel, or the defendant knew the correct maximum penalty. The record is anything but clear and consistent in establishing that *89 the defendant "in fact" knew the trae and correct maximum penalty he faced. From this record the majority concludes not only that the defendant was told of the maximum penalty but that he knew and understood it.
¶ 119. I have, until now, focused on the majority opinion. The concurring opinion strikes out in a somewhat different direction, focusing more on the defendant's understanding of the maximum penalty. The concurring opinion concludes that the defendant does not "receive an evidentiary hearing because there would have been no point in taking testimonial evidence. .. . [The defendant's] claim that he lacked understanding of the maximum sentence was objectively incredible given the ample evidence in the record of the correct information he had received.... [A] defendant 'should not be permitted to game the system by taking advantage of judicial mistakes....'" "Requiring the court to conduct an evidentiary hearing to receive what was already evident throughout the record would have served no legitimate purpose in this case." Concurrence, ¶¶ 21, 24, 29, 30.
¶ 120. The concurrence worries about the defendant gaming the system. Concurrence, ¶ 29; see also majority op., ¶ 39.1 do not favor allowing the defendant (or anyone else) to game the system. Here the defendant satisfied the Bangert requirements, requirements established by this court that entitle him to an evidentiary hearing. How is the defendant gaming the system?[24]
*90 ¶ 121. According to the concurring opinion, a circuit court should decide whether to hold a Bangert evidentiary hearing based on what it surmises the evidence will be at the evidentiary hearing and what it predicts the outcome of the evidentiary hearing will be about the defendant's knowledge and understanding. What legal principle or theory allows courts to decide whether to hold an evidentiary hearing based on court conjecture?
¶ 122. When the circuit court, prosecuting attorney, and defense counsel all failed to recognize that the defendant was being told different and inconsistent maximum penalties and failed to explain the correct maximum punishment, how can the majority and concurring opinions indifferently conclude that the defendant knew and understood that his charges carried a maximum sentence of eight years of imprisonment and not six or eight years in prison, numbers the defendant was given by the court and defense counsel? The majority and concurring opinions are telling us (with straight faces) that although all the legally trained, courtroom-experienced participants in the plea colloquy and sentencing (namely the judge, the defense counsel, and the prosecuting attorney) displayed their ignorance of the correct maximum penalty, the defendant, the only participant in the plea hearing who did not have the benefit of a legal education, is the only participant who actually knew and understood the correct maximum penalty. This cannot be right.
‡ H* ‡ ‡
¶ 123. Plea colloquies, indeed many, many plea colloquies, are being conducted every day in courtrooms across this state. Plea colloquies upon a plea of guilty or no contest are the "bread and butter" of criminal *91 practice. Plea colloquies are frequent and recurrent court events with constitutional overtones and ramifications.
¶ 124. More than 25 years ago, the court decided the Bangert case. The court has clearly and decisively adhered to Bangert declaring that "[complying with the requisite standards [of Bangert] is not optional."[25]
¶ 125. The Bangert line of cases sets down relatively simple, relatively "bright-line" rules instructing the circuit courts, the court of appeals, this court, defendants, and counsel about the goals of a plea colloquy, how a plea colloquy should be conducted, and the route to be taken when the plea colloquy is defective. There is no indication the framework is not working. Once again, I ask, "Why disturb it now?"[26]
¶ 126. The majority opinion and concurrence have unnecessarily muddied waters often plied, to the detriment of us all. We now have an inconsistent "jurisprudence of flawed plea colloquies" apparently governing an overstatement of a penalty, an understatement of a penalty, a substantial misstatement of a penalty, and an insubstantial misstatement of a penalty. This court is supposed to clarify the law. It has not.
¶ 127. For the reasons set forth, I dissent.
¶ 128. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 Prior to accepting a guilty plea, it is the circuit court's duty "[t]o establish the accused's understanding of... the range *77 of punishments which [the crime] carries ...." State v. Bangert, 131 Wis. 2d 246, 262, 389 N.W.2d 12 (1986).

 "During the course of the plea hearing, the court must address the defendant personally and... establish the defendant's understanding of the ... range of punishments to which he is subjecting himself by entering a plea...." State v. Brown, 2006 WI 100, ¶ 35, 293 Wis. 2d 594, 716 N.W.2d 906.

 Wisconsin Stat. § 971.08(l)(a) provides in relevant part as follows: "Before the [circuit] court accepts a plea of guilty or no contest, it shall... [a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of... the potential punishment if convicted."

 Concurrence, ¶¶ 73-75.
In Brown, the court concluded that the failure to advise the defendant that the punishment for each charge could run consecutively did not entitle the defendant to an evidentiary hearing "in the absence of any allegation that the defendant did not understand the effect of multiple charges on his sentence." Brown, 293 Wis. 2d 594, ¶ 78.
I also agree with the concurrence, Part I, ¶¶ 62-71, that the majority errs in undertaking a manifest injustice analysis. The manifest injustice analysis is unnecessary under the facts of this case. The Bangert analysis suffices, as explained by the concurrence. This conclusion is apparent in the majority opin *78 ion itself. The majority opinion's manifest injustice analysis simply repeats its own Bangert analysis. See also State v. Lichty, 2012 WI App 126, ¶¶ 8, 9, 344 Wis. 2d 733, 823 N.W.2d 830 (explaining the relationship of a Bangert violation and the manifest injustice approach).

 Concurrence, ¶¶ 61, 72, 75.

 May 26, 2009 (defendant did not appear).

 August 20, 2009 (nothing said of the penalty).

 November 24, 2009 (nothing said of the penalty).

 January 25, 2010 (Attorney states that he received a copy of the information. Formal reading of information was waived).

 August 23, 2010.

 October 11, 2010.

 The defendant's brief states the issue before the court as follows: Is a defendant's no contest plea knowing, voluntary and intelligent when the defendant is mistakenly informed by the trial court that the maximum sentence was six years rather than the correct eight years imprisonment and believes that the maximum sentence is lower than it actually is?

 Bangert, 131 Wis. 2d at 257, 274-75 (citing Boykin v. Alabama, 395 U.S. 238, 242-43 (1969)).

 The majority opinion states and restates its rationale and holding in several different ways so that it is difficult to determine what test the majority adopts or uses to determine that the defendant's plea was knowingly, intelligently, and voluntarily made.
The majority opinion can be read in a number of ways:
*80 The defendant's plea is knowing, intelligent, and voluntary because the complaint and information stated the correct maximum penalty. Majority opinion, passim.
The defendant's plea is knowing, intelligent, and voluntary because the record makes clear that the defendant knew the maximum penalty that could be imposed and the defendant was orally informed at the plea hearing of the penalty he received. Majority op., ¶¶ 8, 28.
The defendant's plea is knowing, intelligent, and voluntary because the defendant was orally informed by the circuit court at the plea hearing of the sentence that he actually received. Majority op., ¶¶ 8, 28, 39, 42, 52, 54.
The defendant's plea is knowing, intelligent, and voluntary because the circuit court's misstatement of the penalty is an insubstantial defect. Majority op., ¶¶ 34, 39.
• The majority opinion does not attempt to define "insubstantial defect." By applying an insubstantial defect test, is the majority opinion really applying a harmless error test by a different name?
• Is the majority opinion abrogating the Cross decision with regard to the doctrine of insubstantial error?
The Cross opinion states that when "the sentence communicated to the defendant is higher, but not substantially higher, than that authorized by law, the incorrectly communicated sentence does not constitute a Bangert violation and will not, as a matter of law, be sufficient to show that the defendant was deprived of his constitutional right to due process of law.... We conclude that Cross has not made a prima facie showing that the circuit court failed to comply with Wis. Stat. § 971.08 or the requirements outlined in Brown and Bangert...." State v. Cross, 2010 WI 70, ¶¶ 40-41, 326 Wis. 2d 492, 786 N.W.2d 64. In contrast with Cross, the majority opinion treats the instant case as one with a flawed plea colloquy; treats the error in the plea colloquy as an insubstantial defect; and requires the circuit court to review the record to determine whether the plea was entered knowingly, intelligently, and voluntarily.

 Indeed it is often difficult to follow the majority opinion's discussion of what the defendant knew as the opinion continually shifts, not always precisely or correctly, between referring to "imprisonment" (which encompasses confinement and extended supervision) and "prison" (which encompasses only confinement).
For a discussion of the statutory use of the term "imprisonment," see Wis. Stat. § 973.01(1) and State v. Cole, 2003 WI 59, ¶ 16, 262 Wis. 2d 167, 663 N.W.2d 700 (under Wis. Stat. § 973.01, the word "imprisonment" refers to a "bifurcated sentence" consisting of a "term of confinement in prison followed by a term of extended supervision."). See also State v. Jackson, 2004 WI 29, ¶ 5 n.4, 270 Wis. 2d 113, 676 N.W.2d 872 ("Under Truth-in-Sentencing legislation, the term 'imprisonment' does not mean time in prison. Rather, 'imprisonment' consists of both the time of confinement (in prison) and the time following the confinement spent on extended supervision.").

 "If a defendant does not understand ... the implications of the plea, he should not be entering the plea, and the court should not be accepting the plea." Brown, 293 Wis. 2d 594, ¶ 37.

 It takes some time and effort to understand how the penalty statutes work together in the instant case.
Here is how I calculated the maximum penalty when the defendant is charged with Uttering a Forgery, Repeater, a Class H Felony.
The potential penalty for a Class H felony is "a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both." Wis. Stat. § 939.50(3)(h).
"For a Class H felony, the term of confinement in prison may not exceed 3 years." Wis. Stat. § 973.01(2)(b)8.
"The term of extended supervision may not be less than 25% of the length of the term of confinement in prison imposed under par. (b) and, for a classified felony, is subject to whichever of the following limits is applicable:... For a Class H felony, the term of extended supervision may not exceed 3 years." Wis. Stat. § 973.01(2)(d)5.
Because the defendant was a repeater due to prior convictions for misdemeanors, "[a] maximum term of imprisonment of more than one year but not more than 10 years may be increased by not more than 2 years if the prior convictions were for misdemeanors ...." Wis. Stat. § 939.62(l)(b).
*83 "Subject to the minimum period of extended supervision required under par. (d), the maximum term of confinement in prison specified in par. (b) may be increased by any applicable penalty enhancement statute. If the maximum term of confinement in prison specified in par. (b) is increased under this paragraph, the total length of the bifurcated sentence that may be imposed is increased by the same amount." Wis. Stat. § 973.01(2)(c).

 Lichty, 344 Wis. 2d 733, ¶ 14 (citing State v. Sutton, 2006 WI App 118, ¶ 15, 294 Wis. 2d 330, 718 N.W.2d 146).

 The circuit court in the present case advised the defendant (incorrectly) of the term of confinement without advising him correctly of the term of imprisonment.

 The transcript reads: "The Court: I could impose the maximum penalty here of a $10,000 fine or six years in prison or both if I thought that's what was necessary. Do you understand that?"

 Brown, 293 Wis. 2d 594, ¶ 40 n.24 (citation omitted) (quoting Bangert, 131 Wis. 2d at 275).

 The majority asserts: "To conclude that Taylor was not aware of the maximum eight-year term of imprisonment, we would have to assume that Taylor's trial counsel misrepresented, on the plea questionnaire form itself and to the court, that he had read the form with Taylor and that Taylor understood it. We would also have to assume that Taylor misrepresented to the court that he had received, read, and understood the complaint and plea questionnaire form." Majority op., ¶ 39 (emphasis added).
The irony, of course, is that defense counsel and the majority opinion confuse prison and imprisonment. The concurrence rewrites defense counsel's notation of "8 yrs/prison" on the *88 plea questionnaire, interpreting it as "likely shorthand for '8 years of imprisonment.'" Concurrence, ¶ 22. The concurrence also assumes that "[t]here is a very high likelihood that Taylor's attorney, Michael Dally, explained the meaning of eight years of imprisonment to Taylor." Concurrence, ¶ 27 n.5.
Were we to grant the evidentiary hearing required by Bangert, we would not have to make any assumptions about the defendant's understanding and defense counsel's advice. Whether a defendant is entitled to a Bangert hearing does not turn on this court's retrospective speculation of what defense counsel likely meant on the plea questionnaire or whether "there is a very high likelihood" that defense counsel properly explained the meaning of "eight years of imprisonment."

 Majority op., ¶ 39 (quoted at note 22, supra). In Brown, 293 Wis. 2d 594, ¶ 12-13, 52-53, the plea colloquy was flawed but the defendant had stated on the record during the plea colloquy that he understood the charges, that he had had the complaint read to him, and that he had gone over the elements of the charges with his attorney. This record was still not sufficient to refuse the defendant an evidentiary hearing.

 Justice Prosser, writing for the court in Brown, explained how to prevent a defendant from gaming the system: "Thus, only the [circuit] court, with the assistance of the district attorney, can prevent potential sandbagging by a defendant by engaging the defendant at the plea colloquy and making a complete record." Brown, 293 Wis. 2d 594, ¶ 38.

 Brown, 293 Wis. 2d 594, ¶ 52.

 Cross, 326 Wis. 2d 492, ¶ 47 (Abrahamson, C.J., concurring).